## Sullivan, Appellant, *v.* Carmany.

Argued January 11, 1956. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*H. Rank Bickel, Jr.,* with him *Bickel, Davis & Katz,* for appellants.

*L. E. Meyer,* with him *Meyer, Brubaker & Whitman,* for appellee.

OPINION BY MR. JUSTICE ARNOLD, March 15, 1956:

Plaintiffs appeal from the refusal of their motion for new trial in this action of trespass for personal injuries to plaintiff-wife, arising out of an automobile collision. The case was tried before a jury and resulted in a verdict for defendant.

The sole basis for new trial urged on this appeal is that the court below erred in its affirmance of defendant's seventh point for charge, which read: "Mrs. Sullivan, in making a turn into a private driveway from a through highway where the speed limit was 50 miles per hour, is to be held strictly accountable for the manner in which she drove." Prior to so charging, the court had fully and properly charged the jury on negligence and contributory negligence in all respects.

On the day in question, plaintiff-wife was driving westerly, and defendant was operating his automobile in an easterly direction, on route 322 in the village of Fontana. The highway is 22 feet in width and has a black top surface. As plaintiff reached a point opposite a private driveway to her left, she stopped on the berm on her right side to permit a truck, travelling in the same direction, to pass her. She then looked to the west and, observing no approaching traffic, turned left to proceed towards the private driveway. When she was approximately one-half of the distance across the highway she saw defendant approaching from the west at a fast rate of speed, and at a distance of about 400 feet. From the point of impact there is a clear view to the west for as much as 662 feet. Plaintiff estimated defendant's speed at 50 to 70 miles per hour. The evidence also established that there were "two unbroken parallel skid marks 60 feet long on the eastbound lane

from the debris west." Defendant and his witness testified to a speed of approximately 40 miles per hour; that plaintiff "darted across the street"; and that he could not avoid striking her. The speed limit was 50 miles per hour.

A careful examination of the charge is convincing that the jury was fully informed and could have been under no misapprehension as to the law or the facts. As the court below well said:

"Under these circumstances, we are of the opinion that the plaintiff-operator was under the same duty of care as if she were entering a through highway . . .

". . . it is clear that this plaintiff, after stopping on the north berm of said through highway, upon entering the through highway, observed the defendant's car approaching from her right, but continued to cross said highway in front of it although she had ample opportunity to stop and avoid the collision. While she complied with the duty of stopping her car before entering the through highway and complied with the requirements that she should look in both directions before entering the intersection, her duty did not end there. She was required to yield the right of way to vehicles approaching from either direction on the through highway. When she moved forward and entered the intersection it was also her duty to continue to look as she advanced in the intersection and to keep her car under control so she could stop at any moment to avoid a collision. . . .

"As to defendant's seventh Point for Charge, the plaintiffs argue that said Point was tantamount to said court charging the jury that if plaintiff made a turn into a private driveway *into* [from] a through highway and an accident resulted she was guilty of contributory negligence as a matter of law and that it placed an unfair burden upon the plaintiff. With this argument

we cannot agree. The phrase in said point, 'to be held strictly accountable for the manner in which she drove', merely means that she would be answerable and liable for any negligence which the jury would find that she was guilty of. The construction of the words, 'strictly accountable,' is said to mean, in the New World Dictionary based on Webster, 'answerable, responsible, and liable to be called to account'. In 'Words and Phrases,' Volume 1, 'accountable' is defined to be 'liable for'. Wherefore, under the law, and the proper construction of the term used, we are of the opinion that the plaintiffs were not prejudiced by the averment(s) of the said Point(s) for Charge . . ."

Judgment affirmed.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It is a matter of philosophical wonderment to me how persons of education will, in order to achieve a certain predetermined effect, attempt to stretch, twist, distend, shrink and manipulate the significance of the simplest language into a meaning bearing no resemblance to the intent of the original words. The Trial Judge in this case, in his charge to the jury, said: "Mrs. Sullivan, in making a turn into a private driveway from a through highway where the speed limit was 50 miles per hour, is to be held strictly accountable for the manner in which she drove." This declaration obviously says that Mrs. Sullivan turned from a 50-mile-per-hour-speed-through-highway into a private highway, and by so doing, committed a wrong for which she was liable. This utterance by the Trial Judge stripped from the jury's deliberations all consideration of the subject of contributory negligence. In words as clear as lettered blocks to a child, the Judge said that Mrs. Sullivan was guilty of a fault for which she was to be held

"strictly accountable" by the jury. And if the jury obeyed the Judge's instructions, as we must assume they did, it was inevitable that the jury would turn the plaintiff out of court. This the jury did, and the plaintiff has asked for a new trial.

I believe she is entitled to that new trial because it was the Judge's instructions which opened the gate through which her chance of a recovery disappeared into the mists of oblivion. What are the facts in this case? On June 30, 1953, Mrs. Sullivan was driving her car westwardly on Route 322 in the town of Fontana, Lebanon County, and at about 11:30 a.m., arrived at a point opposite the house she intended to visit. She stopped her car, waited to allow a truck to pass by, and then proceeded from the north side of the highway to the south side, in order to enter the private driveway flanking the house which was her destination. As she was accomplishing this crossing and before she had reached the south margin of the road, she was struck by the defendant's car. The question for the jury to decide, (holding in abeyance the question of negligence of the defendant), was whether Mrs. Sullivan, in transversely crossing Route 322, had committed an act of contributory negligence. That question was exclusively one of fact. No law prohibited Mrs. Sullivan from passing from the north to the south border of Route 322. The only restriction on her crossing the road was that she exercise due care. Did she exercise due care? The Judge did not permit the jury to decide that factual issue. He categorically announced that by turning from a Through Highway into a private driveway, Mrs. Sullivan committed an act for which she was *strictly accountable*. In other words, she was guilty of contributory negligence.

The Judge's statement was additionally erroneous in that it conveyed the idea that Mrs. Sullivan swerved

from the highway while driving at a high rate of speed (possibly 50 miles per hour) and then dashed across the street, aiming at the private driveway. The facts of course, were otherwise. As already stated, she made a full stop and from a stationary position started across a highway which was only 22 feet wide. She was struck before she could possibly have acquired any appreciable momentum.

The Trial Judge attempts to dilute the significance of his phrase, "strictly accountable", by saying that it merely means that Mrs. Sullivan "would be answerable and liable for any negligence which the jury would find that she was guilty of." But he did not say that. He said that Mrs. Sullivan was to be held *strictly accountable* period. He did not instruct the jury that they were to weigh all the facts and decide whether her method of crossing convicted her of contributory negligence. He gave the jury no choice of decision whatsoever. And this Court has affirmed the Judge's conspicuous and flagrant error.

What does the phrase "strictly accountable" really mean? Invariably it is predicated on an assumed trespass of some kind. It is practically impossible to employ the expression in any but a threatening or punitive sense. Who has not seen signs on private property reading: "Persons crossing this line will be held strictly accountable"?

"Strictly accountable" easily conjures up the scene of a policeman taking someone into custody; it pictures an aggrieved person instructing his lawyer to prepare an action against the aggressor; it suggests the legal sword half-drawn from the saber.

The Majority Opinion (by affirming the lower Court's Opinion) endeavors to explain away the severe connotation of "strictly accountable" by pointing to

the work "Words and Phrases," where *accountable* is defined to be "liable for." But by defining *accountable,* the Majority only explains one-half of the phrase. The Majority's explanation can be likened to an argument that there is nothing dangerous about "a snake in the grass" because "grass" is harmless. It is interesting to note further that the writer of the original Opinion was on the wrong path and turned off at the wrong well when he quoted from "Words and Phrases," because the definition of "accountable" in the volume cited, has to do with *promissory notes,* not a motorist crossing the street! "Words and Phrases" says: " 'Accountable' when written on the back of a note after an indorser's name, means 'subject to pay,' 'responsible', or *'liable for.'* " This, then, is the authority for allowing a misuse of words which deceived the jury—and deprived Mrs. Sullivan of a fair trial. The Majority, (still quoting from the lower Court), purports to quote from "the New World Dictionary based on Webster," but there, again, the definition is of the single word "accountable," and not the phrase "strictly accountable." Standing alone, "accountable" is as far removed from "strictly accountable" as "chestnut" is from a "chestnut horse."

The Majority Opinion says that: "A careful examination of the charge is convincing that the jury was fully informed and could have been under no misapprehension as to the law or the facts." But this observation suggests a reading of the jury's mind with an optical instrument of some kind which is denied to me. I do not know what the jury thought or under what apprehension they were. I only know what the Judge told them. He said: "Under the decisions of our Court it is the duty of the Jury to accept from the Court, that is, the Trial Court, the rules of law governing the case, that being the best evidence of the law that the Jury

can have; and you may not disregard what the Court says about the law, *whether it seems reasonable or unreasonable.*" (Emphasis supplied)

Under that definitive instruction, which amounted to an admonition of possible punishment if they did not accept the Judge's statement, the Jury had to take as Holy Writ what he said to them about the law—reasonable or unreasonable. There could well have been several jurors who thought that the Judge's instructions were unreasonable, but they could not refuse the deceptive lantern he handed them.

But, even without the above quoted statement on the supreme power of the Judge, the jury looks upon the Judge as the authoritative expression of the law. The word of the Judge in the courtroom is like the directive of an army general in the field, the command of an admiral over his fleet, or the ukase of an absolute monarch in his kingdom. It is because of this required obedience of the jury to the judge's instructions that the appellate courts are called upon to review the words and the actions of the Courts below. But if we are to take the Trial Judge's words and force them into a mold which will support the verdict, regardless of their reasonableness, we may as well abdicate our functions of review and proclaim the infallibility of the Trial Judge.

I believe that this Court should hold Trial Judges strictly accountable for giving erroneous instructions to the jury by requiring the awarding of new trials in such cases.