543 A.2d 1221

**COMMONWEALTH of Pennsylvania**

v.

**Sterling K. MOLL, Appellant.**

Superior Court of Pennsylvania.

Argued April 5, 1988.

Filed June 14, 1988.

Reargument Denied Aug. 5, 1988.

148

Charles A. Rector, LeMoyne, for appellant.

M.L. Ebert, Jr., Assistant District Attorney, Carlisle, for Com., appellee.

Before BROSKY, MONTEMURO and JOHNSON, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence entered against appellant after his non-jury trial for criminal mischief.

Appellant challenges the sufficiency of the evidence to support his conviction for criminal mischief. For reasons appearing *infra,* we vacate the judgment of sentence and discharge appellant.

Appellant was arrested and charged with criminal mischief as a result of his admitted action in cutting a hole in a fifteen-inch storm drain pipe installed by the Borough of Wormleysburg, Cumberland County, on an easement adjacent to his property. While appellant admits to the act of

cutting and, as a result thereof, damaging the drain pipe which belonged to the Borough, the crux of his representation is that "his conduct occurred without the presence of criminal intent to endanger property as is required by [18] Pa.C.S.A. [§] 3304(a) 2 [sic]." Appellant's Brief, p. 6. For appellant, this lack of criminal intent, which forms the basis of his argument to this Court, translates into the Commonwealth's failure to prove the malice element of this offense.

The concept of legal malice imports the absence of any justification, excuse or recognized mitigation of circumstances, an actual intent to cause the resulting harm or the willful commission of an act with the awareness of a strong likelihood that harm may result. *See Commonwealth v. Rife,* 454 Pa. 506, 312 A.2d 406 (1973). However, in the absence of malice as an express element of an offense, the Commonwealth must, instead, prove that an actor acted intentionally, knowingly, or recklessly. *Commonwealth v. Moore,* 261 Pa.Super. 92, 395 A.2d 1328 (1978). The section of the Crimes Code under which appellant is charged, 18 Pa.C.S.A. § 3304(a)(2),[1] requires, as an element of its perpetration, intent or recklessness. Thus, malice is now embraced within the elements of intent, knowledge and recklessness. *See* Official Comment to § 302 of the Crimes Code, 18 Pa.C.S.A. § 302, defining the various requirements of culpability. The Comment goes on to state that words like "malice" have no settled meaning, and, consequently, the design of present Section 302 is to eliminate the obscurity of that term. Accordingly, if the Commonwealth's level of proof had risen sufficiently to establish beyond a reasonable doubt the element of either intent or recklessness necessary to demonstrate that appellant caused the harm

1. Although the information charges appellant with criminal mischief without citation to any subsection, the information does recite that he "intentionally, knowingly, recklessly or negligently damage[d] or tamper[ed] with the tangible property of another." This essentially tracks the language of Section 3304(a)(2). The showing of criminal negligence and the requirement of damage to tangible property are included as elements to Section 3304(a)(1). But this subsection is inapplicable as no evidence exists that appellant employed fire, explosives or other dangerous means in digging towards and cutting the pipe.

which the statute intended to prevent, it would have also proven that appellant acted with malice.

Appellant acknowledges that his act of cutting the pipe was intentional. He denies, however, that he was motivated by malice, i.e., an evil motive, to endanger property. Rather, he claims that this act was necessary to protect *his* property from flooding. The flooding caused damage to the understructure of appellant's property, and his method of "self-help" actually alleviated the problem because it facilitated surface drainage of water from his property. We believe appellant's reasoning here to be that his conduct did not rise to the level of harm which the criminal mischief statute was designed to prevent.

The section of the criminal mischief statute with which appellant was charged reads as follows:

§ 3304. Criminal mischief

(a) Offense defined.—A person is guilty of criminal mischief if he:

. . . . .

(2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property....

. . . . . .

In this regard, appellant's intent when he broke the drain pipe, as he perceives it, was to protect *his* property, not to endanger the property of another. However, we must still contend with the facts that (a) appellant admitted his intent to break the pipe; and (b) the pipe belonged to the Borough, rather than to appellant.

The applicable section of the statute requires an intent to *endanger* property. As we stated earlier, appellant readily acknowledges that he broke the pipe. He even reported this misdeed to the appropriate Borough officials. But he disavows any criminal i.e., malicious motive in doing so. It is true that if an actor declares his intent, this establishes the requisite frame of mind without resort to circumstantial proof of his conduct. *See Commonwealth v. O'Searo*, 446

Pa. 224, 352 A.2d 30 (1976); *Commonwealth v. Wright,* 289 Pa.Super. 399, 433 A.2d 511 (1981).

Turning to Section 302 of the Crimes Code, 18 Pa.C.S.A. § 302, we see that it defines the culpable mental states elemental to the commission of the instant offense.

(b) Kinds of culpability defined.—

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his *conscious object* to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

. . . . .

(3) A person acts recklessly with respect to a material element of an offense when he *consciously disregards a substantial and justifiable* risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

Emphasis added.

Hence, if appellant were criminally motivated in cutting the pipe, the Commonwealth would have to prove that the nature of his conduct was to consciously cause the result the statute here in question seeks to guard against, i.e., tampering with tangible property of another with the intent to place person or property in danger.

The record made at the non-jury trial is replete with testimony from Borough Officials describing the problems which appellant had had with the Borough regarding past drainage problems. These problems culminated in the filing of two civil suits by appellant against the Borough. Three witnesses described appellant when he arrived at the

Borough Building to report his misdeed as angry and upset. They testified that appellant was red-faced and shouting.

Interestingly, the Commonwealth makes much ado about appellant's subsequent behavior at the Borough Building and focuses its appellate argument on this later conduct. However, appellant's subsequent outburst and his general demeanor could not support a conviction for criminal mischief, since we may rely only upon the attendant facts and circumstances during the actual commission of the offense. While it may be true that appellant could have been (and probably was) angry and upset as he dug and then cut the offending hole in the pipe, we glean nothing in the language of the criminal mischief statute which makes emotionally charged behavior an element of this crime. Display of anger or other emotional upset, alone, simply does not translate into criminally actionable behavior.

Appellant cites *Commonwealth v. Hines*, 32 Pa.D. & C.3d 206 (1985), to support his assertion of lack of criminally culpable behavior here. In *Hines*, two girls were observed breaking off tree limbs and throwing portions of the limbs against a building. At a *de novo* hearing after one defendant's summary conviction for criminal mischief, the trial court concluded that proof of malicious intent was not properly inferable under the circumstances. The prevailing circumstance there was that although defendant denied breaking limbs or damaging trees, she admitted pulling leaves from a tree as a jest. The trial court held that the act, even if committed as charged, was not the result of an evil intent or motive.

■ We believe that *Hines* is dispositive of the instant matter. The commission of an act done out of whim, jest, caprice or fancy is no different from one committed primarily to prevent structural damage to and land devaluation of one's property in the absence of any criminally motivated intent, as here. Neither the Commonwealth nor the trial court seriously discount the applicability of *Hines* to the case at bar. As we stated elsewhere, however, the Commonwealth fruitlessly attempts to create a nexus between

appellant's act of cutting the storm pipe to facilitate surface drainage on his land and his subsequent display of emotion at the Borough Building to justify the charge of criminal mischief.

The statute in question requires intent to tamper with property so as to place a person or persons or property in danger. Mr. Rowland, the Borough's consulting engineer and the Commonwealth's expert in this case, testified that the hole cut in the pipe was small. He also testified that any damage that could result would be due to the appearance of dirt and debris in the pipe. If dirt and debris accumulated in the pipe, the latter would eventually clog and lead to backup. This, in turn, would cause further ponding of water (N.T. 35). He further testified that it would not be unusual for water, dirt and debris to be in a storm drain because these elements normally travel through the pipe. This is true even where a pipe has no holes whatever. As to the offending pipe here, Mr. Rowland indicated that he saw a "little bit of dirt" in the pipe when he looked into the hole which appellant had cut (N.T. 50). Finally, he testified that after the pipe had been flushed, which is a common practice, no foreign material was present (N.T. 55, 59). Mr. Rowland's anticipation that if another rainstorm had occurred, debris would have flowed through the pipe, resulting in a large amount of soil settling in the pipe, is speculative because, as appellant's counsel pointed out, no debris was found (N.T. 59). Consequently, no harm rising to the level of criminality was suffered to the pipe. Here, the Commonwealth has simply failed to satisfy the element of intent to cause the harm contemplated by the statute.

■ The applicable provision of the criminal mischief statute is worded in the disjunctive, however. Therefore, we must next consider whether appellant's conduct was reckless. This means that the Commonwealth must demonstrate that appellant disregarded an unjustifiable and substantial risk that his conduct would produce the intended result, i.e., the domino effect of clogging, backup and then

ponding. Appellant's conduct in that regard would have to be shown to be a gross deviation from the standard of conduct of a reasonable person in appellant's situation. As we stated earlier, no evidence of dirt or debris which could lead to endangerment of the pipe or to any other thing or person was proven to exist. Thus, since appellant's conduct did not cause the harm which the statute seeks to protect against, it logically follows that the risk which appellant was assumed to have disregarded was equally non-existent.

We note that in reviewing the trial testimony, its tenor throughout retains the flavor of a trial of a civil suit for damage to the pipe, with appellant here admitting his liability insofar as the cutting but affirmatively defending that act on the basis of its ameliorative and remedial effect. The criminal courts of this Commonwealth are impressed with a duty to avenge harm and evil deeds committed against society. They do not now and were never meant to redress civil wrongs, as the Borough of Wormleysburg has sought here. Running appellant through the prosecutorial gauntlet is plainly an unfitting vehicle through which the Borough of Wormleysburg seeks redress for the harm done to its property. On this note, we caution both the Borough and the Commonwealth that:

> [a]n avidity to punish is always dangerous to liberty. It leads men to stretch, to misinterpret, and to misapply even the best of laws. He that would make his own liberty secure must guard even his enemy from oppression; for if he violates his duty, he establishes a precedent that will reach to himself.

T. Paine, *Dissertation on First Principles of Government,* in Common Sense and Other Political Writings, Thomas Paine 174 (W.F. Adkins ed. 1953) (1776). We urge the Borough, the Commonwealth and appellant to cast aside their respective battle gear and, instead, in the spirit of compromise, attempt a meaningful resolution of this and all related disputes among the parties.[2]

2. Two law suits were filed by appellant against the Borough. The first resulted in the installation of the offending drain pipe which has now

Moreover, the instant prosecution of appellant is not reflective and fails to effectuate the general purposes of the Crimes Code, which are:

(1) To forbid and prevent conduct that unjustifiably inflicts or threatens substantial harm to individual or public interest.

(2) To safeguard conduct that is without fault from condemnation as criminal.

(3) To safeguard offenders against excessive, disproportionate or arbitrary punishment.

(4) To give fair warning of the nature of the conduct declared to constitute an offense, and of the sentences that may be imposed on conviction of an offense.

(5) To differentiate on reasonable grounds between serious and minor offenses, and to differentiate among offenders with a view to a just individualization in their treatment.

18 Pa.C.S.A. § 104.

That the subject criminal prosecution achieves these otherwise laudable goals here simply fails to persuade. Accordingly, we find it necessary to vacate the judgment of sentence of twelve-months' unsupervised probation imposed upon appellant and order his discharge. We are reminded that Section 302(a) of the Crimes Code, 18 Pa.C.S.A. § 302(a), states that a person cannot be guilty of an offense unless he acts intentionally, knowingly, recklessly or negli-

become the eye of the controversy among the parties. Continuing this saga is a second suit by appellant against the Borough filed pursuant to the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8521 *et seq.* The tenor of this complaint sounds in negligence on the part of the Borough for failing to take action to protect appellant's property against structural damage and land devaluation. The Complaint also requests equitable relief. As an appellate tribunal, we are not prone, of course, to indulge in speculation. Our role is limited to the application of the law to facts appearing of record. In examining the instant record, we observe that the information *charging appellant with the subject offense was handed down only *after* appellant filed the second suit, with approximately only one month separating the two events. We cannot be faulted, while in the performance of our judicial duties, for making a passing query as to what significance, indeed, if any, attaches to the chronological juxtaposition of these two occurrences.

gently, depending on the minimum requirements of culpability set forth in the statute, with respect to each element thereof.

█ Even if we were to conclude that appellant's conduct rose to a criminally culpable level, we would nevertheless incline towards the same result and order the prosecution dismissed as a *de minimis* infraction pursuant to Section 312 of the Crimes Code. That provision reads in applicable part as follows:

§ 312. De minimis infractions

(a) General rule.—The Court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

.    .    .    .    .

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant condemnation of conviction. . . .

.    .    .    .    .

18 Pa.C.S.A. § 312(a)(2).

This section applies to situations where no harm occurs either to the victim or to society, generally. *Commonwealth v. Moses*, 350 Pa.Super. 231, 504 A.2d 330 (1986). Its purpose is salutary—to remove petty infractions from the reach of the criminal law. *See* Comment following Section 312. Appellant's act, while damaging, did not rise to the level of "the harm or evil sought to be prevented by the law defining the offense [of criminal mischief]. . . ." Under the circumstances, it was "too trivial to warrant condemnation of conviction."

The spirit of rebellion which aroused appellant's fury against a political body non-responsive to the crys of an outraged citizen, yet quick to condemn his protestations as incorrigible and his motives ignoble is no different from that which kindled the zeal and the quest for liberty (we

more often than not take for granted) by a rankled citizenry of small folk well over two hundred years ago. Since that time long past, many changes have been wrought on this Nation and this Commonwealth. We are heartened to see, however, that this fervor, boldness and intrepidness are yet very much alive, well and pervasive in at least one citizen of the Borough of Wormleysburg, Cumberland County, Pennsylvania.

Like Thomas Jefferson, we, too, "hold it, that a little rebellion, now and then, is a good thing, and as necessary in the political world as storms in the physical." Letter to James Madison (January 30, 1787).

Judgment of sentence vacated; appellant is ordered discharged. Jurisdiction is not retained.

MONTEMURO and JOHNSON, JJ., concur in the result.