McEWEN, Judge:
Appellant, William J. Cosgrove, has filed this appeal as of right from the order, entered November 3, 1993, which denied, without prejudice, his petition to dismiss the criminal complaint filed against him by the Office of the Attorney General charging him with the offenses of theft by deception,[1] un-sworn falsification to authorities,[2] and corrupt organizations.[3] We are constrained, for the reasons set forth hereinafter, to quash this appeal as premature.
Appellant, doing business as the North End Plumbing Company and North End Plumbing, Inc., was charged by criminal complaint dated March 22, 1993, and sworn to by Special Agent Michael Crossin of the Office of the Pennsylvania Attorney General, with 24 counts of theft by deception, and 24 counts of unsworn falsification to authorities, based upon appellant’s request for and receipt of allegedly excessive amounts of reimbursement pursuant to a contract with the Scranton Sewer Authority during the calendar year 1991 — and, as well, a further COUNT OF CORRUPT ORGANIZATIONS. Appellant was arrested on March 22, 1993, and, on April 15,1993,14 days prior to the scheduled preliminary hearing, filed a petition for a rule to show cause why the complaint should not be dismissed or, in the alternative, why a “Goodman” hearing [4] should not be held prior to the preliminary hearing. The trial court *547 granted the rule to show cause and entertained argument by the parties on June 3, 1993, and September 20, 1993.
The distinguished Judge Carlon M. O’Mal-ley, on November 3, 1993, following submission of memoranda by counsel, denied, without prejudice, appellant’s petition to dismiss the criminal complaint, noting, however, that “serious questions are being raised herein relative to the authority of the Attorney General to institute these proceedings”. Appellant, on December 3, 1993, filed an appeal as of right to this Court pursuant to Pa. RApp.P. 313. Appellant also filed, as a precautionary appeal, a petition for permission to appeal an interlocutory order,[5] aware of the compelling arguments of the Commonwealth in support of their contention that the instant appeal was premature.
Appellant initially contends that this appeal is properly before us as the order of November 3,1993, is immediately appealable pursuant to Pa.R.App.P. 313. Rule 313 provides:
a) General Rule — An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
b) Definition — A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the ease, the claim will be irreparably lost.
Pa.R.App.P. 313.
The Commonwealth contends that the instant appeal does not involve a collateral order and, therefore, must await the entry of a final order, and also argues that, even if an interlocutory appeal was permissible pursuant to Pa.RApp.P. 313, the instant appeal, taken from an order entered even before a preliminary hearing has been held, must be quashed as premature. While we agree that appellant must be permitted to challenge, prior to trial, the authority of the Attorney General to proceed in this matter, we are not persuaded that appellant may do so prior to the completion of the preliminary hearing.
Appellant has challenged the authority of the Attorney General to investigate and prosecute the offenses set forth in the criminal complaint, citing Section 205(a)(1) — (8) of the Commonwealth Attorneys Act, Act of October 15, 1980, P.L. 950, No. 164 § 101 et seq., 71 P.S. § 732-205(a)(l)-(8).[6] Appellant con-
*548 cedes that 71 Pa.C.S. § 732-205(a)(2) authorizes the Attorney General to investigate and prosecute criminal charges involving corrupt organizations as provided for in 18 Pa.C.S. § 911, but argues that the charge of violating 18 Pa.C.S. § 911 is contrived and was included in the criminal complaint solely for the purpose of enabling the Attorney General to wrongfully assert jurisdiction over the instant case.[7]
Both the Supreme and Superior Courts have previously reviewed pre-trial challenges to the authority of the Attorney General. The Pennsylvania Supreme Court, in Commonwealth v. Bobitski, 534 Pa. 310, 632 A.2d 1294 (1993), affirmed an order which had granted the pre-trial motion of the defendant to quash three counts of an indictment, arising out of a scheme whereby the defendant, an employee of Thrift Drug, solicited bribes in exchange for awarding construction contracts. The trial court dismissed one count of forgery and two counts of corrupt organizations, leaving for trial five counts of com-
(7) Indictments returned by an investigating grand jury obtained by the Attorney General.
mercial bribery, and one count of tampering with records.
The Supreme Court, in Bobitski, in affirming the lower courts, framed the issue as “whether the Pennsylvania Corrupt Organizations Statute (18 Pa.C.S. § 911) can be applied to an individual who committed a series of criminal acts for his own benefit while employed by a legitimate enterprise, where the Commonwealth concedes that there are no identifiable ties between the individual, the enterprise, and ‘organized crime’.” Id. at 312, 632 A.2d at 1295. The Court in Bobitski expressly rejected the federal courts’ interpretation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq., which does not require “the prosecution to establish a nexus between the individual and/or the enterprise being charged and ‘organized crime’ ”, Id. at 325 n. 2, 632 A.2d at 1296 n. 2. Rather, our Supreme Court specifically there held that the .Corrupt Organizations Statute is applicable only to “organized crime ‘as it is commonly understood’”. Id. at 314, 632 A.2d at 1296.[8]
*549 Appellant, arguing that the complaint makes no reference to “organized crime” and contending that he has no connection to “organized crime”, contends that he must be permitted to challenge the decision of the Attorney General to charge him with a violation of the Corrupt Organizations Statute, and is entitled to an immediate hearing to develop the factual basis of the jurisdiction of the Attorney General to investigate and prosecute this action. See: Commonwealth v. Goodman, supra.
The decision of appellant to challenge the authority of the Attorney General almost immediately after the filing of the criminal complaint has resulted in a record which contains, in essence, only the complaint and the affidavit of probable cause. The complaint charges appellant with the theft of $174,-160.43 as a result of “intentionally creating and reinforcing the false impression that the amount submitted for reimbursement was the actual direct cost for furnishing the materials for emergency Scranton Sewer Authority projects when in fact the amounts submitted were in excess of those costs incurred by the defendant, the President of North End' Plumbing, Inc.” and “by intentionally creating and reinforcing a false impression that [appellant], doing business as North End Plumbing Company, had paid prevailing wage rates to employees of North End Plumbing Company on emergency projects for the Scranton Sewer Authority, and requested and received reimbursement for excess amounts as set forth below.” Count 49 of the complaint, which charges appellant with a violation of the Corrupt Organizations statute, provides:
Between January 1, 1991, and December 31, 1991, the Defendant was employed by or associated with an enterprise, to wit, a group of individuals associated in fact although not a legal entity, engaged in commerce and trading as “North End Plumbing Company” or “North End Plumbing Incorporated”, a corporation engaged in commerce, of which the Defendant was President, and the Defendant conducted or participated, directly or indirectly, in the conduct of the enterprise’s affairs through a pattern of racketeering activity as set forth in detail in counts 1-48 above, each of which is within the definition of ‘racketeering activity” as set forth in 18 Pa.C.S. § 911(h)(1).
Appellant correctly argues that the Superi- or Court in Commonwealth v. Goodman, supra, sanctioned the pre-trial review by a trial court of the use of the Corrupt Organizations Statute by the Attorney General so as to *550 prevent the wrongful assertion of jurisdiction by the Attorney General. While we agree that the appellate courts have sanctioned the review of the prosecutorial authority of the Attorney General prior to trial, we believe that such review may not properly be invoked until the conclusion of a preliminary hearing.
Our Supreme Court in Commonwealth v. Carsia, 512 Pa. 509, 517 A.2d 956 (1986), affirmed a pre-trial order quashing the information filed against Carsia by the Attorney General, based upon the limitations imposed upon the Office of the Attorney General by the Attorney’s Act. The defendant in Carsia had been held over for trial following a preliminary hearing and, after the filing of the information against him, filed a motion to quash based upon the lack of authority for the Attorney General to prosecute the ease. The trial court granted the motion and the Commonwealth appealed. The Supreme Court subsequently affirmed the trial court, holding that “the Attorney General can only investigate and prosecute criminal actions set forth under section 205 of the Act”. Commonwealth v. Carsia, supra at 511, 517 A.2d at 957.
Similarly, the Supreme Court in Commonwealth v. Bobitski, supra, entertained an appeal originally taken by the Commonwealth from a pre-trial motion to quash various counts of an indictment, in particular, charges of corrupt organizations, and affirmed the decision of the trial court to quash those counts of the indictment upon which the Attorney General had relied for authorization to prosecute the action.
The Superior Court in Commonwealth v. Goodman, supra, also affirmed an order which had granted the pre-trial motion of the defendant based upon the absence of any statutory authorization for the Attorney General to investigate or prosecute the case. In Goodman, as in the instant case, “the only justification for the Attorney’s General’s investigation rests on the grant of authority under Section 205(a)(2) which in turn relies on his authority under 18 Pa.C.S. § 911.” This Court, affirming the trial court, reiterated that the primary purpose of the Corrupt Organizations statute is “to prevent the infiltration of legitimate business enterprises by organized crime.” Commonwealth v. Goodman, supra at 420, 500 A.2d at 1126 quoting Commonwealth v. Brady, 470 Pa. 420, 433, 368 A.2d 699, 706 (1977) (footnote omitted). In each of the cases in which this Court or the Supreme Court has reviewed a challenge to the authority of the Attorney General to investigate or prosecute a case, however, review has been conducted following the conclusion of the preliminary hearing.
Pennsylvania Rule of Criminal Procedure 306 provides that “[ujnless otherwise required in the interests of justice, all pretrial requests for relief shall be included in one omnibus pretrial motion.” Rule 307 provides that the motion is to be filed and served within 30 days after arraignment. The Comment to Rule 306 notes that the types of relief to be requested in the omnibus pretrial motion include suppression of evidence and requests to quash an indictment or information.
While appellant persuasively argues that the “interests of justice” require that an evi-dentiary hearing be conducted prior to the preliminary hearing, we believe that the rights of appellant will be adequately protected through the orderly presentation of the issues sought to be raised in this appeal in the omnibus pre-trial motion where the record from the preliminary hearing,will be available for the scrutiny of the trial court and, if necessary, the Superior Court.
We, therefore, quash this appeal without prejudice to the right of appellant to file a pre-trial appeal from any adverse determination made by the trial court following proceedings in conformity with Pennsylvania Rule of Criminal Procedure 306.
Appeal quashed. Jurisdiction relinquished.

. 18 Pa.C.S. § 3922.

. 18 Pa.C.S. § 4904.

. 18 Pa.C.S. § 911.

.Commonwealth v. Goodman, 347 Pa.Super. 403, 500 A.2d 1117 (1985).

. Commonwealth v. Cosgrove, — Pa.Super. -, 648 A.2d 546 (1994). This petition is pending. See, e.g., Thermo-Guard. Inc. v. Cochran, 408 Pa.Super. 54, 59-65, 596 A.2d 188, 191-193 (1991).

. § 732-205. Criminal prosecutions
(a) Prosecutions. — -The Attorney General shall have the power to prosecute in any county criminal court the following cases:
(1) Criminal charges against State officials or employees affecting the performance of their public duties or the maintenance of the public trust and criminal charges against persons attempting to influence such State officials or employees or benefit from such influence or attempt to influence.
' (2) Criminal charges involving corrupt organizations as provided for in 18 Pa.C.S. § 911 (relating to corrupt organizations).
(3) Upon the request of a district attorney who lacks the resources to conduct an adequate investigation or the prosecution of the criminal case or matter or who represents that there is the potential for an actual or apparent conflict of interest on the part of the district attorney or his office.
(4) The Attorney General may petition the court having jurisdiction over any criminal proceeding to permit the Attorney General to supersede the district attorney in order to prosecute a criminal action or to institute criminal proceedings. Upon the filing of the petition, the president judge shall request the Supreme Court to assign a judge to hear the matter. The judge assigned shall hear the matter within 30 days after appointment and make a determination as to whether to allow supersession within 60 days after the hearing. The district attorney shall be given notice of the hearing and may appear and oppose the granting of the petition. Supersession shall be ordered if the Attorney General established by a preponderance of the evidence that the district attorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion.
(5)When the president judge in the district having jurisdiction of any criminal proceeding has reason to believe that the case is a proper one for the intervention of the Commonwealth, he shall request the Attorney General to represent the Commonwealth in the proceeding and to investigate charges and prosecute the defendant. If the Attorney General agrees that the case is a proper one for intervention, he shall file a petition with the court and proceed as provided in paragraph (4). If the Attorney General determines that the case is not a prop *548 er case for intervention, he shall notify the president judge accordingly.
(6) Criminal charges investigated by and referred to him by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a dufy to enforce its provision.
(8) Criminal charges arising out of activities of the State Medicaid Fraud Control Unit as authorized by Article XIV (relating to fraud and abuse control), act of June 13, 1967 (P.L. 31, No. 21), known as the "Public Welfare Code,” and the Federal law known as the "Medicare-Medicaid Antifraud and Abuse Amendments.”
71 P.S. § 732-205(a) (footnotes omitted).

. Appellant explicitly urges that the Attorney General has proceeded in ultra vires fashion, and implicitly suggests that the Attorney General was motivated to do so for ulterior purposes. While it is but misjudgment for a government official to proceed in good faith to an ultra vires exercise of authority, for an official to do so with an ulterior motive is sheer oppression. Such abuse of authority is acknowledged to be a most invidious form of governmental oppression for, as we have seen in the present time, allegations of such misfeasance assisted to effect the extinction of the Pennsylvania Crime Commission. In any event, while there is arguable merit to the claim that the Attorney General has proceeded in ultra vires fashion, there is no evidence in this record of such ulterior personal motive. Moreover, even when the nature and extent of an ultra vires action lends a hue of validity to a claim of ulterior motive, such claims are more typically resolved in the political arena than the judicial forum.

. The oldest Supreme Court in the land, happily, follows the straight line course of plain meaning and common sense when it holds that racketeers are the target of the Racketeering Act. On the other hand, a portion of the federal judiciary engages in such verbal contortions and intellectual acrobatics as to resemble a Wallenda Family reunion, for only "free fall” holdings enable a federal prosecutor to add a Racketeering Act charge to an indictment of a member of Congress for campaign contribution violations, and permit the Racketeering Act to be the basis for assessment of massive counsel fees against pro-life activists. See: H.J. Inc. v. Northwestern Bell Telephone Company, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (Scalia, J., dissenting). Such an approach inspired the legendary jurisprudential philosopher Justice Michael A. Musmanno to aptly observe:
It is a matter of philosophical wonderment to me how persons of education will, in order to achieve a certain predetermined effect, attempt to stretch, twist, distend, shrink and manipulate the significance of the simplest language into a meaning bearing no resemblance to the intent of the original words.
Sullivan v. Carmany, 384 Pa. 486, 489, 121 A.2d 174, 176 (1956). Similarly telling is the echo *549 provided by our eminent colleague Judge John G. Brosky:
On this note, we caution both the Borough and the Commonwealth that:
[a]n avidity to punish is always dangerous to liberty. It leads men to stretch, to misinterpret, and to misapply even the best of laws. He that would make his own liberty secure must guard even his enemy from oppression; for if he violates his duty, he establishes a precedent that will reach to himself.
T. Paine, Dissertation on First Principles of Government, in Common Sense and Other Political Writings, Thomas Paine 174 (W.F. Adkins ed. 1953) (1776).
Commonwealth v. Moll, 375 Pa.Super. 147, 154, 543 A.2d 1221, 1225 (1988), allo, denied, 522 Pa. 611, 563 A.2d 497 (1989).
A fundamental principle of a government of laws is that a citizen may only be subjected to punishment for violation of expressly proscribed conduct, which is to say that a citizen may not be subjected to punishment for conduct which a prosecutor or editor, or even a neighborhood, or even a majority of the citizenry, perceives as offensive or wanting in style or taste or demean- or — nullum crimen sine lege. Many assert that the "free-fall” interpretations of the RICO Act by the federal judiciary violate this primary and essential principle, thereby abandoning such sacred constitutional preclusions as the void-for-vagueness doctrine, and the bans upon ex post facto laws and upon the arbitrary and discriminatory abuse of the police power. The common law, so revered in the early days of the republic, has been replaced throughout the land by criminal codes, since the fashion in which judges relied upon personal views and public whim to fill perceived gaps in the common law inspired an aversion to judge-made law. Moreover, a particular feature of the two horrible totalitarian regimes of this century was the use of the police power to so manipulate the prosecution and judiciary that judge-made law became but further decrees of the dictator. Simply put, there are valid and abundant reservations about "the democratic basis” of judge-made law. See: WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., CRIMINAL LAW, § 2.1 (2d ed. 1986) (a succinct and insightful discussion of this issue). And, of course, since "free fall” interpretation is but a form of judge-made law, the “free fall” interpretation of the RICO Act should trigger serious concern.