J-A03006-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| OPAL MARIE HARING | : | |
| Appellant | : | No. 370 WDA 2018 |

Appeal from the Judgment of Sentence December 28, 2016
In the Court of Common Pleas of Greene County Criminal Division at
No(s):  CP-30-CR-0000275-2015

BEFORE:   BOWES, J., SHOGAN, J., and STRASSBURGER*, J.

MEMORANDUM BY BOWES, J.:                                        FILED JUNE 11, 2019

Opal Marie Haring appeals from the December 28, 2016 judgment of sentence of three years of county intermediate punishment, which was imposed following her conviction of possession with intent to deliver ("PWID"). After careful review, we affirm.

Appellant's conviction stems from a controlled drug buy arranged and supervised by the Greene County Drug Task Force.  The Commonwealth's evidence at trial revealed the following.  Confidential informant Shawna Jeffries ("CI")[1] agreed to solicit and buy four Subutex pills from Appellant, a long-time friend.  The law enforcement detail and the CI met at the courthouse on February 12, 2015, for a briefing about the operation.  Officer Lisa Sowden of the Waynesburg Borough Police Department conducted a search of the CI,

_____

[1]  The CI's identity was revealed at trial.

*  Retired Senior Judge assigned to the Superior Court.

and Detective Michael Hampe, employed by the Greene County DA's office, drove the CI to the buy site at 291 High Street. A second car containing Officer Sowden, Chief County Detective David Lloyd and Detective Donald Cross, followed for purposes of providing rolling surveillance and back up. On the way, Detective Hampe gave the CI $100 in pre-recorded official funds.

Detective Hampe parked the car on East Street, a short distance from the intersection with High Street. A white female, whom he later identified as Appellant, was standing on the corner. She crossed over High Street and approached his vehicle. He remained in the car as the CI exited and met the woman behind the car. The two women had a brief conversation, and then they walked back toward 291 High Street where Detective Hampe lost sight of them because there was a wall obstructing his view. Detective Hampe did not see any transaction take place. The CI returned to the car and handed Detective Hampe a small brown envelope that contained three round pills imprinted with the number 54411 and $20 in cash, and they proceeded to a predetermined meeting place.

As the foregoing events were occurring, Detective Cross was driving the surveillance vehicle. Detective Lloyd was seated in the front passenger seat and Officer Sowden was located in the rear passenger seat. According to Officer Sowden, they headed west on High Street and observed Detective Hampe as he parked on North East Street. They saw the CI leave the vehicle and walk with Appellant, who was personally known to Officer Sowden. After the two women turned right onto High Street at the stop sign, Officer Sowden

saw them stop near a silver four-door Volkswagen that was parked. Officer Sowden testified "[t]here was a movement between them and they parted ways after that." N.T., 9/29/15, at 119. However, she "did not see any type of exchange as far as like a hand-to-hand or anything like that, anything notable." Id. at 122. Officer Sowden did not see anyone in the parked vehicle. She observed the CI turn and head back down the hill toward Detective Hampe's car. When Detective Hampe and the CI later met up with the surveillance team at the pre-arranged location, Officer Sowden again searched the CI, but found no drugs, money or paraphernalia. Id. at 120.

The Commonwealth presented the testimony of lab technician Robert Elsavage, who had examined the three pills and confirmed that they were buprenorphine, a Schedule III controlled substance. The Commonwealth also called Nicholas Palmer. Mr. Palmer, a neighbor and friend of Appellant, acknowledged that he called the Waynesburg Police on April 22, 2016, and recalled making a statement to police, but maintained that he was high at the time. He testified that Appellant had asked him to go to court to tell the truth, and she did not offer him anything in return, which was purportedly inconsistent with his statement.

According to Mr. Palmer, on the date in question, he was seated in the back seat of the parked car, a blue Volkswagen owned by "Mike," a friend of Appellant from West Virginia. Appellant exited the car and walked toward the intersection where she met the CI, Shawna Jeffries, whom he also knew. As the two women approached the car in which he and Mike were sitting, he

- 3 -

heard the CI asking for pills, and Appellant refusing to provide them. He described the CI as "delirious." Id. at 161. When he realized that the CI was not going away, he put three of his "subs" on the seat, she grabbed them, hugged Appellant, and walked away. Id. at 156. Mr. Palmer did not see any money. The pills he provided were not prescribed for him and they were not contained in an envelope or bag.

Mr. Palmer explained that he and Appellant subsequently had a falling out after he falsely accused her of taking his aunt's laptop. He spit in Appellant's face, and she struck him. He reported that incident to the Waynesburg Borough Police, and subsequently gave the statement to Officer J. Hanley.[2] Officer Hanley testified that Mr. Palmer was upset and agitated when he gave the statement, but he did not seem intoxicated. The officer also confirmed that Appellant called the police the same day and that there were charges of harassment pending against her for having slapped Mr. Palmer. Officer Hanley supplied the statement to Detective Lloyd, and it was admitted into evidence as a prior inconsistent statement.

Thus, at the close of the Commonwealth's case, it was uncontroverted that Appellant was prescribed Subutex, the brand name for buprenorphine, a Schedule III controlled substance, which had less potential for addiction than schedule I and II drugs. There was no direct evidence that Appellant

_____

[2] It appears that in his statement to police, Mr. Palmer stated that Appellant offered him pills if he would testify at trial.

- 4 -

possessed or supplied the CI with the controlled substance, and Mr. Palmer had admitted that he provided the pills.

The defense recalled Detective Hampe to the stand. The detective testified that the CI provided a written statement in which she reported that Appellant only wanted to sell her one pill, but when the CI begged for more, Appellant acquiesced. The CI said that Appellant reached into the car, grabbed her bottle, and gave the CI two more pills, and the CI paid her $80. Detective Hampe confirmed that when he received the pills from the CI, they were in a small brown envelope. Id. at 181.

Detective Cross testified that his narcotics unit had arrested the CI for other violations and, thereafter, she agreed to assist law enforcement. He also obtained the license plate number on the car parked next to Appellant and the CI, which he subsequently determined was owned by Michael Dingus of Blacksville, West Virginia. Id. at 201. However, he did not look inside the vehicle to see if anyone was present. Detective Lloyd saw the parked car in front of 291 East High Street, but he also did not see anyone in the car.

Beth Downer, Appellant's adult probation officer, confirmed that Appellant was under supervision. In January 2015, Appellant was attending a mental health and substance abuse program. She was also enrolled in a Subutex program and subject to regular pill counts as a condition of participation. On February 18, 2015, Ms. Downer met with Appellant and personally performed a pill count. There were no irregularities. Ms. Downer

continued to supervise Appellant and there had been no subsequent violations of the pill counts.

Appellant took the stand in her own defense. She testified that she is a recovering heroin addict with two daughters, a seven-year-old and an eight-month-old. She and the CI had been friends since high school. Appellant had given the CI money, rides, and a place to stay. Appellant kicked the CI out of her house in January 2015, because she left needles and crack pipes around Appellant's daughter. Appellant was working at the time, going to the Subutex clinic once a month, and attending AA and NA meetings. She acknowledged that she still had cravings, but that the Subutex helped her resist the urge.

Appellant testified that the CI called her and said she wanted to buy four Subutex. Appellant offered to break the pill in half that she takes at night and give the CI half, but the CI insisted she needed to buy four pills. Appellant told the CI that she could not sell her the pills, but the CI wanted to talk to Appellant. Appellant agreed, but advised the CI that her boyfriend Mike Dingus was on his way from Morgantown to take her out for Valentine's Day.

Appellant testified to the following sequence of events. She met the CI in front of her house. The CI held out money, and Appellant refused. The CI wanted to see if anyone in the car could help her, and diverted her attention to Dingus and Palmer who were seated in the car. Appellant testified that she did not give the CI any pills. All she had on her person was one-half of one pill that she was going to give the CI to alleviate the CI's sickness, but the CI would not accept it. Id. at 223. Appellant testified that she subsequently

learned that Mr. Palmer set three pills on the seat and told the CI to take them and leave. When Appellant later was arrested on these charges, she confronted both Mr. Dingus and Mr. Palmer, and told them that whoever provided the pills to the CI should speak up because she was not going to jail and losing her children for someone else's conduct.

At the close of all the evidence, Appellant moved for judgment of acquittal on the possession charge. She argued that she could not be guilty of illegally possessing a controlled substance as she had a prescription for the Subutex. The Commonwealth agreed and withdrew the possession charge. Two counts were submitted to the jury: PWID and delivery of a controlled substance. The jury acquitted Appellant of the delivery charge, but found her guilty of PWID.

Following her sentencing on December 28, 2016, Appellant filed a timely post-sentence motion in which she challenged the sufficiency of the evidence supporting her PWID conviction, alleged that the verdict was against the weight of the evidence, and asserted that restitution was improper. On February 8, 2018, the court denied the post-sentence motion. Appellant timely appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents three issues for our review:

1. Where the [A]ppellant legally possessed prescribed medication, is the evidence sufficient to convict [Appellant] where a former dear friend acting as [a CI] to gain consideration for her legal difficulties acts for the drug task force, begs [A]ppellant to sell four pills for $100, but

[A]ppellant refuses, and when after repeated harassment by the [CI], [A]ppellant considered sharing one of her own pills but a third person acting for himself to stop the ordeal gives the informant three pills which the [CI] grabs and returns to the task force car?

2. Did the trial court abuse its discretion in not awarding the [A]ppellant a new trial under the circumstances where the Court and jury rejected the Commonwealth's version of the incident and the verdict was against the weight of the evidence?

3. Was the conduct of the [A]ppellant such that the charge of [p]ossession with [i]ntent to deliver should be dismissed as de minim[i]s?

Appellant's brief at 10.

Appellant alleges first that the evidence was insufficient to sustain her conviction of PWID, especially since she was acquitted of delivery of a controlled substance. In conducting our review of the sufficiency of the evidence,

we view all of the evidence admitted, even improperly-admitted evidence. We consider such evidence in a light most favorable to the Commonwealth as the verdict winner, drawing all reasonable inferences from the evidence in favor of the Commonwealth. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail.

Commonwealth v. Haynes, 116 A.3d 640, 656 (Pa.Super. 2015) (citations omitted). "In addition, the Commonwealth can prove its case by circumstantial evidence." Id. at 657. It is only where "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances," that a defendant is entitled to relief. Id.

- 8 -

Appellant contends that there was no evidence that she had a controlled substance in her possession at the time of the alleged controlled drug buy. She asserts that only evidence of possession of a controlled substance was possession by Mr. Palmer and the CI.

The record refutes Appellant's position. The CI's statement that Appellant handed her three Subutex pills in exchange for $80 came into evidence though the testimony of Detective Hampe. Although such testimony was arguably inadmissible hearsay, there was no objection to its admission.

In order to sustain a PWID conviction, "the Commonwealth must establish the defendant knowingly or intentionally possessed a controlled substance without being properly registered to do so, with the intent to manufacture, distribute, or deliver it."[3] Commonwealth v. Dix, __A.3d___, 2019 Pa. Super. LEXIS 305, *12-13 (Pa.Super. 2019) (quoting Commonwealth v. Brown, 48 A.3d 426, 430 (Pa.Super. 2012)); see also 35 P.S. § 780-113(a)(30). The CI's statement alone, as reported by Detective

_____

[3] PWID is defined as

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113a(30).

Hampe, if credited by the fact-finder, was sufficient to prove that Appellant possessed a controlled substance. This claim fails.

Appellant argues next that a new trial was required as the verdict was against the weight of the evidence. She points to the fact that the jury, in acquitting her of the delivery of controlled substance charge, rejected the notion that Appellant possessed and delivered the three pills that the CI subsequently handed over to police. She argues that "the mere contemplation of offering a half of a pill under these circumstances which [the CI] refused . . . is not a crime." Appellant's brief at 33. There was no evidence, Appellant contends, that she removed one-half of one pill from her pocket or took any step to effectuate an intent to give it to the CI. Id. at 34.

Our standard of review of a weight of the evidence claim is well established:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Commonwealth v. Clay, 64 A.3d 1049, 1055 (Pa. 2013) (quoting Commonwealth v. Widmer, 744 A.2d 745, 753 (Pa. 2000)).

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must

> examine the record and assess the weight of the evidence; not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury.

Id. at 1056 (emphasis in original). Where the record adequately supports the decision of the trial court, the trial court has acted within the limits of its judicial discretion.

The trial court concluded that there was "nothing to suggest that the jury verdict was so contrary to the weight of the evidence that it would shock one's sense of justice." Trial Court Order, 2/8/19, at 7. Even accepting Appellant's version of the events, she offered the CI one-half of her legally prescribed Subutex pill to alleviate the CI's addiction-related sickness. Although the CI declined the offer, the jury's finding that Appellant possessed a controlled substance with intent to distribute was not contrary to the weight of the evidence. We find no abuse of discretion on the part of the trial court.

Finally, Appellant contends that her conduct, namely, offering one-half of a pill to a friend in distress, was de minimis, as that term is defined in the Crimes Code, 18 Pa.C.S. § 312. She maintains that the offense was "petty," and not intended to cause harm to the CI or to society in general, and that the trial court should have dismissed the prosecution on that basis alone. Cf. Commonwealth v. Lutes, 793 A.2d 949, 963 (Pa.Super. 2002) (affirming

refusal to dismiss disorderly conduct citations as de minimis because appellant's threats of physical harm caused annoyance and alarm to the victim). Appellant argues further that, without her honest testimony that she offered the CI one-half of one pill, there would have been no evidence from which the jury could have inferred that she possessed a controlled substance with intent to deliver.

In reviewing a trial court's refusal to dismiss a prosecution for conduct that is allegedly de minimis, we evaluate the trial court's ruling for an abuse of discretion. Lutes, supra at 963; see also Commonwealth v. Przybyla, 722 A.2d 183 (Pa.Super. 1998). As set forth in 18 Pa.C.S. § 312(a):

> (a) General rule. -The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:
>
> (1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;
>
> (2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
>
> (3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S. § 312(a). As we reaffirmed in In re M.M., 855 A.2d 112, 114 (Pa.Super. 2004), "[t]he purpose of Section 312 is 'to remove petty infractions from the reach of the criminal law.'" (quoting Commonwealth v. Moll, 543 A.2d 1221, 1226 (Pa.Super. 1998)).

We note that Appellant did not seek dismissal of the PWID charge on this basis below. Thus, the trial court was not given the opportunity to consider whether § 312(a) warranted dismissal of the PWID conviction herein, and the claim is waived. See Pa.R.A.P. 302(a). Furthermore, as the Commonwealth correctly points out, the conduct identified by Appellant as de minimis was presented to the jury by Appellant and Mr. Palmer. Whether the jury actually convicted Appellant based on her version of the events is unknown. The Commonwealth charged Appellant with PWID based on her possession of three Subutex pills, and the CI's statement alone was sufficient to sustain the conviction of that offense. For that reason as well, Appellant would not be entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/11/2019

- 13 -