J.S52008/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON PARKER, | : | |
| | : | |
| Appellant | : | No. 286 EDA 2013 |

Appeal from the Judgment of Sentence December 21, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0014583-2011

BEFORE: GANTMAN, P.J., ALLEN, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED APRIL 20, 2015**

Appellant, Jason Parker, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas following a bench trial and his convictions for fleeing or attempting to elude police officer,[1] criminal mischief,[2] simple assault,[3] and recklessly endangering another person.[4] Appellant challenges the sufficiency of evidence for his criminal

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. § 3733(a).

[2] 18 Pa.C.S. § 3304(a)(2). This was graded as a second-degree misdemeanor. Order, 9/12/12.

[3] 18 Pa.C.S. § 2701(a).

[4] 18 Pa.C.S. § 2705.

mischief conviction, the trial court's denial of his motion for a medical expert, the weight of the evidence for all of his convictions, and whether his trial counsel was ineffective by not having a medical expert testify. We vacate his conviction and sentence for criminal mischief, and affirm the remaining convictions. Because Appellant was sentenced to no further penalty for criminal mischief, we need not remand for resentencing as we did not disturb the trial court's overall sentencing scheme.

We adopt the facts and procedural history set forth by the trial court. *See* Trial Ct. Op., 10/28/13, at 1-11. We add that Appellant, although represented by counsel, filed numerous *pro se* motions,[5] including a motion requesting $2,000 to pay for, *inter alia*, a "diabetic expert doctor" to testify on his behalf. Appellant's *Pro Se* Mot. to Provide Funds for the Def. to Hire an [sic] Diabetic Doctor, 5/29/12, at 1. The court did not rule on any of Appellant's *pro se* motions.

After a bench trial and a guilty verdict, the court sentenced Appellant on September 12, 2012, to nine to eighteen months' incarceration for fleeing or attempt to elude a police officer.[6] The court imposed no penalty for the remaining convictions. On September 14, 2012, Appellant filed a timely counseled post-sentence motion, which did not challenge the weight of the

---

[5] Appellant served his *pro se* motions on his counsel, among others.

[6] We note Appellant rejected a plea offer of nine to twenty-three months' imprisonment.

evidence. Before the court ruled on Appellant's post-sentence motion and while still represented by his then-counsel, Appellant filed a *pro se* notice of appeal on January 9, 2013.

On January 18, 2013, Appellant's new counsel entered her appearance. On February 5, 2013, the trial court ordered *pro se* Appellant to comply with Pa.R.A.P. 1925(b), but did not serve the order on Appellant's new counsel. Appellant then filed a *pro se* Rule 1925(b) statement on February 20, 2013. On March 1, 2013, Appellant withdrew his counseled post-sentence motion. On April 19, 2013, the court granted Appellant's new counsel permission to file a revised Rule 1925(b) statement. Appellant's counsel filed a revised Rule 1925(b) statement on May 9, 2013.

Appellant raised the following issues on appeal:

> Whether the verdict is insufficient as a matter of law specifically with respect to criminal mischief where [Appellant's] acts do not meet the definition of the crime because he did not utilize any hazardous materials or tamper with any tangible objects as required by the crime[.]

> Whether the trial court erred in denying [Appellant's] motion for medical expert[.]

> Whether the verdict was against the weight of the evidence and insufficient as a matter of law where the police officer's testimony and the testimony of Nafakha Muwwakkil were not credible and [Appellant] credibly testified that he went into a diabetic shock and passed out behind the wheel? Furthermore, the Commonwealth did not prove the element of criminal intent as required by each of the statutes[.]

> Whether the verdict is against the weight of the evidence where the police did not have probable cause to stop [Appellant] and pursue him where the police allegedly attempted to pull him over for talking on a cell phone and it was legal to do so. The police also did not have probable cause to stop [Appellant] for failing to have insurance where the uncontroverted evidence was that this vehicle was insured[.]
>
> Whether trial counsel was ineffective for failing to present a medical expert who could have testified to the effects of diabetes, failing to present [Appellant's] wife who was an eyewitness, and misrepresenting to [Appellant] that a bench trial was in [Appellant's] best interest?

Appellant's Brief at 5 (reordered to facilitate disposition).

As a prefatory matter, we resolve the validity of Appellant's *pro se* notice of appeal while he was represented by counsel. In **Commonwealth v. Cooper**, 27 A.3d 994 (Pa. 2011), our Supreme Court resolved a similarly vexing procedural posture involving a premature *pro se* notice of appeal and a subsequent, counseled post-sentence motion. **Id.** at 996. The posture was further complicated by the trial court's failure to forward the *pro se* notice pursuant to Pa.R.Crim.P. 576(A)(4), the court's denial of the counseled post-sentence motion, and a timely counseled notice of appeal. **Id.** at 1006-07. The **Cooper** Court resolved the conundrum by holding, *inter alia*, that the *pro se* notice of appeal was premature and perfected after the trial court denied the subsequent counseled post-sentence motion. **Id.** at 1007.

Given that the instant procedural posture is analogous to the posture in **Cooper**, we similarly hold that Appellant's *pro se* notice of appeal—filed

after counsel filed a post-sentence motion but before the court ruled on it—was premature. *Cf. id.* at 1005-08. We also hold that Appellant perfected his appeal after he withdrew the counseled post-sentence motion. *Cf. id.* Furthermore, because the trial court failed to serve counsel with its Rule 1925(b) order and the court permitted counsel to file a revised Rule 1925(b) statement, we decline to find any Rule 1925 waiver. *Cf. id.*

We now address the merits. In support of his first issue, Appellant contends the evidence was insufficient to convict him for criminal mischief. He maintains that he "collided with another car while driving down the wrong way" of a one-way street. Appellant's Brief at 14. He suggests that his conduct was unintentional and, at best, the Commonwealth established reckless behavior. *Id.* We hold Appellant is due relief.[7]

The standard of review for a challenge to the sufficiency of evidence is *de novo*, as it is a question of law. ***Commonwealth v. Ratsamy***, 934 A.2d 1233, 1235 (Pa. 2007).

> [T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . does not require a court to ask itself whether **it** believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, it must determine simply whether the evidence believed by the fact-finder was sufficient to support the verdict.

---

[7] We note the Commonwealth argued the evidence was sufficient for a conviction under 18 Pa.C.S. § 3304(a)**(5)**. ***See*** Commonwealth's Brief at 12. Appellant, however, was convicted of violating 18 Pa.C.S. § 3304(a)**(2)**. Trial Ct. Op. at 1; ***accord*** Order, 9/12/12, at 1.

*Id.* at 1235-36 (citations and quotation marks omitted). "When reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offense beyond a reasonable doubt." *Id.* at 1237 (citation and quotation marks omitted).

The Pennsylvania Crimes Code defines criminal mischief as follows:

> **(a) Offense defined.—**A person is guilty of criminal mischief if he:
>
>            *     *     *
>
> (2) intentionally or recklessly tampers with tangible property of another so as to endanger person or property;

18 Pa.C.S. § 3304(a)(2).

Section 302 of the Crimes Code defines intentionally and recklessly as follows:

> **(b) Kinds of culpability defined.—**
>
> (1) A person acts intentionally with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
> >
> > (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
>            *     *     *

(3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3).

The material element is "tamper," which is not defined by Chapter 33 of the Crimes Code. Section 302, however, mirrors the proposed language in the Model Penal Code. Model Penal Code § 220.3(1)(b) (1962) ("A person is guilty of criminal mischief if he: . . . purposely or recklessly tampers with tangible property of another so as to endanger person or property"). The Model Penal Code comment sheds some light on the intended reach of the statute:

*Tampering with Property*. Subsection (1)(b) extends the traditional malicious-mischief offense to situations where the defendant tampers with the property of another **in a way that may not itself cause damage** but that creates a risk of danger to person or property. Examples would be the unauthorized moving of a railroad switch, or the unauthorized setting of a control lever in an industrial plant in a way that endangers workmen or the quality of the product. The offense requires that the actor purposely or recklessly tamper with the tangible property of another "so as to endanger person or property." The quoted phrase describes an actual risk of danger that must exist, as to which the defendant must at least be reckless. Actual harm need not occur.

Model Penal Code § 220.3 note (emphasis added). One dictionary defines "tamper" as "to interfere so as to weaken or change for the worse." Webster's Third New International Dictionary, Unabridged 2336 (1986).

The Commonwealth must "prove that the nature of [the defendant's] conduct was to consciously cause the result the statute here in question seeks to guard against, *i.e.*, tampering with tangible property of another with the intent to place person or property in danger." **Commonwealth v. Moll**, 543 A.2d 1221, 1223 (Pa. Super. 1998) (plurality).[8] In **Moll**, the defendant was charged with criminal mischief under subsection (a)(2) for "cutting a hole in a fifteen-inch storm drain pipe." **Id.** at 1222. The defendant admitted to damaging the pipe but denied he had criminal intent:

> [The defendant] denies, however, that he was motivated by malice, i.e., an evil motive, to endanger property. Rather, he claims that this act was necessary to protect **his** property from flooding. The flooding caused damage to the understructure of [the defendant's] property, and his method of "self-help" actually alleviated the problem because it facilitated surface drainage of water from his property. We believe [the defendant's] reasoning here to be that his conduct did not rise to the level of harm which the criminal mischief statute was designed to prevent.

**Id.** at 1223.

---

[8] In **Moll**, two of the three judges on the panel concurred in the result. "We are of course mindful that plurality decisions are not binding as precedent." **Commonwealth v. Antoszyk**, 985 A.2d 975, 981 (Pa. Super. 2009) (citation omitted).

The **Moll** Court held that the Commonwealth failed to establish the defendant intended to damage the pipe with the intended result of "clogging" and backing up the pipe with the ultimate result of "ponding of water." **Id.** at 1224. The Court also held the Commonwealth did not demonstrate that the defendant "disregarded an unjustifiable and substantial risk that his conduct would produce the intended result," *i.e.*, was reckless. **Id.** Thus, regardless of whether the defendant intentionally or recklessly cut the pipe, the Superior Court held the Commonwealth did not demonstrate the defendant's conduct "cause[d] the harm which the statute seeks to protect against." **Id.** at 1225.

Instantly, viewing the record in the Commonwealth's favor, the evidence believed by the fact-finder established that Appellant's vehicle hit the victim's car on the passenger side, backed up and "skimmed" the victim's car, and then drove back the opposite way, damaging the victim's car on the driver's side. N.T. Trial, 9/12/12, at 14-16. We also acknowledge that Appellant conceded his actions at least constituted recklessness. Appellant's Brief at 14.

Nonetheless, we cannot agree that the record established Appellant recklessly, *i.e.*, consciously disregarded a substantial and unjustifiable risk, by interfering—in a non-damaging fashion—with the victim's car in such a manner as to create a risk of danger to person or property. **See** Model Penal Code 220.3 note (extending "malicious-mischief offense to situations

- 9 -

where the defendant tampers with the property of another in a way that may not itself cause damage but that creates a risk of danger to person or property"). The fact that Appellant recklessly drove his vehicle into the victim's car and damaged it is simply not analogous to "the unauthorized moving of a railway switch, or the unauthorized setting of a control lever in an industrial plant," each a non-damaging action. *See id.* Analogous to the defendant in *Moll*, who lacked the intent to clog the pipe, Appellant engaged in the instant behavior while fleeing from the police. *Cf. Moll*, 543 A.2d at 1225. Accordingly, even after considering the evidence believed by the fact-finder, we cannot hold that the evidence was sufficient to establish Appellant recklessly tampered with the victim's car in a non-damaging fashion as to create a risk to person or property. *Cf.* Model Penal Code 220.3 note; Webster's Third New International Dictionary, Unabridged 2336 (1986).

For his second issue, Appellant argues the court erred by denying his *pro se* motion for funds to pay for a medical expert to testify about diabetes. We deny Appellant relief. As noted above, Appellant was represented by counsel when he filed his *pro se* motion; thus, the court could not—and did not—rule on his motion. *See* Pa.Crim.P. 576(A)(4). Because Appellant did not properly move for relief through counsel, the trial court did not rule on the merits of Appellant's *pro se* motion. Accordingly, there is no ruling that could be reviewed on appeal. *See generally* Pa.R.A.P. 302.

We summarize Appellant's arguments for his third and fourth issues. In support of his third issue, Appellant contends the Commonwealth failed to introduce evidence establishing an intent to flee the police and damage another vehicle. He maintains "he blacked out after a diabetic episode and could not remember what happened." Appellant's Brief at 11. For his fourth issue, Appellant argues the police officer's testimony was not credible and thus the police lacked probable cause to stop him for using a cellular phone while driving and for not having insurance. He maintains that he introduced evidence he was insured. For both of these issues, Appellant suggests the verdict was against the weight of the evidence. We hold Appellant waived his issues.

An argument that witnesses are not credible is an argument challenging the weight of the evidence. **Commonwealth v. Lewis**, 911 A.2d 558, 566 (Pa. Super. 2006). The evaluation of the credibility of witnesses is within the exclusive domain of the fact-finder. **Commonwealth v. Akers**, 572 A.2d 746, 752 (Pa. Super. 1990). This Court cannot "entertain a challenge to the weight of the evidence since [its] examination is confined to the 'cold record.'" **Commonwealth v. Brown**, 648 A.2d 1177, 1191 (Pa. 1994) (citation omitted). We only review whether the trial court abused its discretion when it evaluated the challenge. **Id.** (limiting review of weight of evidence to whether trial court abused discretion and not assessing credibility of witnesses). For these reasons, a

challenge to the weight of evidence may not be raised for the first time on appeal. *Id.*; *see also* Pa.R.Crim.P. 607(A). Thus, if the issue is not raised with the trial court initially, it is waived. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009).

Instantly, Appellant argues the testimony of the Commonwealth's witnesses were not credible. Appellant's argument challenges the weight of the evidence. *See Lewis*, 911 A.2d at 566. Appellant, however, did not raise a weight claim in his post-sentence motion, which he withdrew. Thus, because Appellant failed to raise his weight claims before the trial court, he has waived them on appeal. *See Sherwood*, 982 A.2d at 494.

With respect to Appellant's last issue, it is well-settled that challenges to the effectiveness of counsel are generally deferred until collateral review. *See Commonwealth v. Grant*, 813 A.2d 726, 739 (Pa. 2002). There are two exceptions:

> First, we appreciate that there may be extraordinary circumstances where a discrete claim (or claims) of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice; and we hold that trial courts retain their discretion to entertain such claims.
>
> Second, with respect to other cases and claims, including cases such as [*Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003)] and the matter *sub judice*, where the defendant seeks to litigate multiple or prolix claims of counsel ineffectiveness, including non-record-based claims, on post-verdict motions and direct appeal, we repose discretion in the trial courts to entertain such claims, but only if (1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing

and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA.

***Commonwealth v. Holmes***, 79 A.3d 562, 563-64 (Pa. 2013) (citation and footnotes omitted).

Instantly, we agree with the trial court that Appellant failed to raise his ineffectiveness claims for consideration by the trial court and, moreover, did not knowingly waive his right to seek PCRA review. ***See id.*** Accordingly, we decline to address Appellant's ineffectiveness claims on direct appeal, and he is free to raise them again in a PCRA petition. ***See Grant***, 813 A.2d at 739. Accordingly, we reverse Appellant's conviction for criminal mischief, vacate the sentence for criminal mischief, affirm his remaining convictions, and affirm the judgment of sentence in part.

Conviction for criminal mischief is reversed and judgment of sentence thereto is vacated. In all other respects, the judgment of sentence is affirmed. Jurisdiction relinquished.

Judge Allen joins the memorandum.

President Judge Gantman concurs in the result.

J. S52008/14

- 14 -

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2015

COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PA | : | CP-51-CR-0014583-2011 |
| v. | : | TRIAL DIVISION |
| JASON PARKER | : | SUPERIOR COURT DOCKET NO.: |
| | : | 286 EDA 2013 |



CP-51-CR-0014583-2011 Comm. v. Parker, Jason
Opinion

7078651371

**OPINION OF THE TRIAL COURT**

This is the defendant, Jason Parker's, appeal of this Court's findings of September 12, 2012. The defendant filed a timely Notice of Appeal on January 9, 2013, following the denial of a post-trial motion for reconsideration.

On September 12, 2012, at a non-jury trial, this Court adjudged the defendant guilty of Fleeing or Attempting to Elude Officer (75 Pa.C.S §3733(a)); Criminal Mischief -Tampering with Property (18 Pa.C.S §3304(a)); Simple Assault (18 Pa.C.S §2701(a); and, Recklessly Endangering Another Person (18 Pa.C.S. §2705). He was sentenced to nine (9) to eighteen (18) months incarceration to be followed by two (2) years of probation on the fleeing or attempting to elude charge, with no further penalty on all of the other charges. Further, the defendant was adjudged not guilty of Resisting Arrest (18 Pa.C.S. §5104).

In his Revised 1925(b) Statement of Matters Complained of on Appeal[1], the defendant raises the following issues:

---

[1] Prior to the entry of appearance by current counsel, on February 20, 2013, the defendant, in a *pro se* capacity, filed a rambling, handwritten, 11 point (plus subparts), 15 page 1925(b) Statement of Matters Complained of on Appeal. After the appearance of current counsel, this Court granted counsel permission to file a revised 1925(b) statement, after her review of the Notes of Testimony, in order to refine the appellate issues.

1

1. The verdict was against the weight of the evidence and insufficient as a matter of law where the police officer testimony and the testimony of Nafakha Muwwakkil was not credible and the Defendant credibly testified that he went into diabetic shock and passed out behind the wheel. Furthermore, the Commonwealth did not prove the element of criminal intent as required by each of the statutes.

2. The verdict is insufficient as a matter of law specifically with respect to criminal mischief where the Defendant's acts do not meet the definition of the crime because he did not utilize any hazardous materials or tamper with any tangible objects as required by the crime.

3. The verdict was against the weight of the evidence where police did not have probable cause to stop the Defendant and pursue him where the police allegedly attempted to pull him over for talking on a cellular telephone and it was legal for the Defendant to do so. The police also did not have probable cause to stop the Defendant for failing to have insurance where the uncontroverted evidence was that this vehicle was insured.

4. The trial court erred in denying the Defendant's motion for a medical expert.

5. Trial counsel was ineffective for:

      a. failing to present a medical expert who could have testified to the effects of diabetes,
      b. failing to present the Defendant's wife who was an eyewitness,
      c. misrepresenting that it would be the defendant's best interest to select a bench trial.

On September 12, 2012, the Commonwealth presented the testimony of two (2) individuals, an eyewitness/victim, Ms. Nafakha Muwwakkil, and Philadelphia Police Officer Brad Momme. The defendant testified on his own behalf and also presented the testimony of his automobile insurance agent, Steven Torpey, Jr. Defendant's wife testified during the sentencing stage of the proceedings, but was present during the trial. This Court also accepted into evidence, over the Commonwealth's objection, certain hospital/medical paperwork relative to treatment received subsequent to defendant's arrest on December 12, 2011 (Exhibit D-1).

2

Prior to the start of trial, this Court performed an on the record colloquy of the defendant to determine if his election to waive his right to a jury trial was voluntary, knowing and intelligent. Based upon the defendant's responses, this Court concluded that he did, in fact, voluntarily, knowingly and intelligently waived said right. See N.T., 09-12-12, P. 5, L. 10 to P. 12, L.4. The defendant waived formal arraignment and entered pleas of not guilty to all charges.

The Commonwealth first called Nafakha Muwwakkil who testified that on December 12, 2011, at about 8:23 p.m., she was operating her friend's motor vehicle in the area of 7100 Andrews Avenue, Philadelphia, Pa. She was at the stop sign of Andrews Avenue and Uber Street N.T., 09-12-12, P. 13, L. 7-15.

While she was at the stop sign, a car coming from the opposite direction on Uber St., traveling in the wrong direction on Uber St., turned and hit the vehicle she was operating. This vehicle then backed up and skimmed her car. It then proceeded in the opposite direction past her, again hitting her on the driver's side. N.T., 09-12-12, P. 14, L. 1-6. As a result of being struck, the vehicle she was driving sustained damages to the passenger side front end, passenger door, driver's side and the driver's door. N.T., 09-12-12, P. 15, L. 23 to P. 16, L. 6. Ms. Muwwakkil waited in the vehicle until an ambulance arrived and took her to the hospital. N.T., 09-12-12, P. 16, L. 12-19. She suffered injuries to her neck, back and knee and missed a week from work N.T., 09-12-12, P. 16, L. 22-25. She received several months of medical care. N.T., 09-12-12, P. 18, L. 8-9.

After the vehicle struck the car she was operating, it sped off, but because it was dark, she could not see the operator. N.T., 09-12-12, P. 19, L. 14-21. This concluded her direct testimony. The defense did not cross-examine her.

The Commonwealth then called Police Officer Brad Momme, Badge No. 7631, of the 14th Police District. Officer Momme positively identified the defendant in Court as the person with whom he had contact on the date, time and location giving rise to these charges. . N.T., 09-12-12, P. 21, L. 5-8. He testified that he attempted to stop the defendant who was operating a cell phone while driving a vehicle. N.T., 09-12-12, P. 21, L. 17-21. An NCIC/PCIC check revealed that:

N.T., 09-12-12, P. 22:

the registration was suspended due to insurance cancellation. We attempted to pull the vehicle over on the 2000 block of 72nd Avenue with lights and sirens activated, that's when the vehicle began to speed off at a high rate of speed. The vehicle turned westbound on Andrews and began from there. It went on for approximately six, seven blocks. The vehicle went northbound on the 1900 block of Dallas, which was the wrong way. It was one way southbound, which he turned back onto Andrews Avenue when he struck a blue Toyota Solera with a PA tag of GJX7621, filled out an accident report, 201114090920, that's the accident report taken for that incident. The defendant struck the driver's side fender and door. That vehicle was being operated by a female. He struck that door, proceeded to kind of push the vehicle -- try to over compensate into the park vehicle, bounce off

N.T., 09-12-12, P. 23:

that vehicle, and continued to drive at a very high speed away from that incident, we were still pursuing the vehicle as the vehicle took off. We continued to chase the vehicle approximately two to three blocks, where it came to stop, a male fell out of the vehicle, left the vehicle running on the 7000 block of 71st. He bailed out on foot, left the vehicle

4

running, heavy front-end damage. I gave chase, never losing sight of the male. I caught the male on the 1900 block of Dallas, the male was taken into custody. The vehicle was Live Stopped. The defendant did take -- I'm sorry, did receive three different citations. One for the registration being suspended, also reckless driving, and license being suspended.

Officer Momme testified that the speed limit in the area is 25 mph and after the defendant sped off, he estimated that the defendant was operating his vehicle at least twice that speed during the 1 to 3 minute police chase. This officer never lost sight of the defendant's vehicle. N.T., 09-12-12, P. 24, L. 22 to P. 25, L. 20. The chase took place over more than a six (6) block area and the defendant disregarded numerous stop signs. N.T., 09-12-12, P. 26, L. 9-19. During the entire chase, this Officer observed the defendant not using turn signals, swerving, hitting two (2) vehicles and fleeing the scene. N.T., 09-12-12, P. 27, L. 5-8.

The defendant was issued three (3) citations, one each for registration suspended for insurance cancelation; reckless driving; and, license suspended due to being a scofflaw with 56 outstanding tickets. The defendant's vehicle was "Live Stopped" due to the insurance cancellation. N.T., 09-12-12, P. 28, L. 1-16.

On cross-examination, Officer Momme admitted that the reason for attempting to pull the defendant over was for use of a cellphone while driving, which he stated was a code violation, and also for the insurance cancelation per the NCIC/PCIC check. N.T., 09-12-12, P. 29, L. 3 to P. 30, L. 7. At the end of the chase, the defendant stopped his vehicle and then attempted to flee on foot. N.T., 09-12-12, P. 31, L. 1-3. He was arrested and then transported from the scene by other officers. N.T., 09-12-12, P. 31, L. 22-23.

5

With the admission of Commonwealth Exhibits C-1, C-2 and C-3 into evidence without objection, the Commonwealth rested.

This Court found both the testimony of Ms. Muwwakkil as well as Officer Momme credible in regard to the events of this police chase involving the defendant. Cross-examination failed to reveal any discrepancies, conflicts or other inconsistencies in their testimony and no bias or prejudice of either witness was exposed. This Court accepted their testimony as truthful, credible and reliable.

It is well established that the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth. v. Smith*, 2013 PA Super 100 (Pa. Super. Ct. May 1, 2013). This Court chose to believe these witnesses' testimony. Further, the defendant claims that since their testimony is not credible, the evidence is not sufficient to support the verdict. This claim is misplaced, as credibility applies to the weight of the evidence, not its sufficiency. *See Commonwealth v. Dougherty*, 860 A.2d 31, 36 (Pa. 2004) (sufficiency claim attacking credibility of the evidence is not sufficiency claim at all; it is a weight claim and therefore fails). Regardless, these witnesses' testimony was sufficient to prove the elements of the crimes for which this defendant was found guilty, as detailed below.

The defense then presented its case and called Steven Torpey, Jr, an insurance agent for Allstate Insurance Company, as its first witness. Mr. Torpey testified that the vehicle being operated by the defendant (and owned by his wife, Tamara Parker) was insured on December 12, 2011, with coverage having been in place with his company since July 14, 2011 and without any lapse in coverage during that time. N.T., 09-12-12, P. 34, L. 2-12.

6

On cross-examination, Mr. Torpey testified that Mrs. Parker had been a customer since June or July, 2011, even though the letter marked as C-4 addressed the six month period of coverage from December 14, 2011 to June 14, 2011. N.T., 09-12-12, P. 35, L. 19-20.; N.T., 09-12-12, P. 36, L. 17-21. This Court accepted Mr. Torpey's testimony as credible, but not relevant to any of the charges or on the issue of probable cause for the reasons set forth below.

In his 1925(b) Statement, the defendant claims that defense counsel was ineffective for failing to call his wife, Tamara Parker, who was allegedly an eyewitness to the events occurring on the evening of December 12, 2011. This contention, however, is contradicted by the record, as defense counsel initially called Mrs. Parker as a witness in regard to only the insurance issue, then decided she would not testify due to her testimony being cumulative to Mr. Torpey's testimony, stating:

MS. MURBARGER: Defense calls at this point Tamara Parker.
MS. GALIETTA: It's my understanding the testimony from Tamara Parker is cumulative of Mr. Torpey.
MS. MURBARGER: Given Mr. Torpey's testimony, I will not need Tamara Parker. I will not call Tamara Parker. I will call my client Jason Parker.

N.T., 09-12-12, P. 40.

During the sentencing phase, Mrs. Parker did, however, address the Court on her husband's behalf, stating:

N.T., 09-12-12, P. 59:

... It was just unfortunate what happened on that day. I had finals on that particular day, and I couldn't do what I was

7

N.T., 09-12-12, P. 60:

> supposed to do *and prepare for him being out*
> *and going out and doing whatever happened that*
> *day.* ...

Emphasis added.

Clearly, by her own testimony as to "*whatever happened that day*," Mrs. Parker was not an eyewitness to the events of December 12, 2011 and, therefore, this Court concludes that her not being called as a witness for the defense in its case in chief is a meritless issue on appeal as it relates to an ineffective assistance claim, since Mrs. Parker would not have been in a position to provide any testimony to this Court on the defendant's behalf. Had she been an eyewitness with information helpful to the defense, she would not have been present to just provide testimony related to the insurance issue, but eyewitness testimony as well.

The defendant also testified on his own behalf. His testimony was brief. On direct examination, he testified as follows:

N.T., 09-12-12, P. 46:

Q. Mr. Parker, on the day you were arrested, did you take your normal medications?
A. No, I did not.
Q. What kind of medications do you normally take?
A. I take insulin and I take oral medications for diabetes.
Q. Why didn't you take your medication that day?
A. Because I received a call at 7:00 a.m. to go take care of my mother, she just had cancer surgery, so I was supposed to evaluate her and make sure she was stable. So I just rushed over to her house to watch over her.
Q. And did you ever take your medication that day?
A. No, I didn't have a chance too.
Q. Now, what happened when you went out that evening after 8:00 o'clock?
A. I remember my wife went to school and we came

8

home -- she picked me up from my mom's house, and
we came home, and we were watching jeopardy or
something, and I started feeling cold sweats and

N.T., 09-12-12, P. 47:

light-headed and I knew I had to eat and take my
medication, so we called Little Caesar Pizza around
the corner, we ordered pizza and chicken and paid
for it, and that's the last thing I remember.
Q. Did you -- so do you have any memory of
driving your car?
A. None.
Q. Do you have any memory of a crash or arrest?
A. No, I just remember waking up in the hospital
handcuffed to the bed, and they were given me
orange juice and insulin, and I was asking
everybody what happened. The police just kept
telling me to shut the F up, shut the F up.

The defense then marked Exhibit D-1, a packet of hospital records, which was admitted into evidence over the Commonwealth's objection that it was not a complete record. Exhibit D-1 consisted of several pages of records from Albert Einstein Medical Center (AEMC) Emergency Department date December 12, 2011, and a March 12, 2012 handwritten note of Azad Khan, M.D., which statds:

Mr. Parker has uncontrol [sic] Diabetes Mellitus, he is on insulin and oral hypoglycemic medication. He is also treated for Anxiety, Bipolar disorder and Paranoid Schizophrenia. /s/ Azad Khan, M.D.

The AEMC notes indicate that Mr. Parker was seen in the Emergency Department from 9:25 p.m. to approximately 10:30 p.m. During that time, his blood sugar was determined to be 241.

On cross-examination, Mr. Parker was asked the following:

N.T., 09-12-12, P. 49:

Q. Mr. Parker, do you remember having contact
with the officer that testified here today?

9

A. I just remember seeing him at the hospital. I asked him what happened? Why I am handcuffed? He said, shut the F up.

Q. Mr. Parker, do you remember seeing him out on the street?

A. No, I don't.

Q. Do you remember at some point hitting another vehicle?

A. No, I don't.

In order to clarify the record in regard to the defendant's claims that his actions were the result of his diabetic condition, this Court questioned the defendant as follows:

N.T., 09-12-12, P. 49:

THE COURT: Are you a type one or type two diabetic?

THE DEFENDANT: I'm a type two, Your Honor.

THE COURT: Insulin dependent?

THE DEFENDANT: Insulin and I take oral medications?

N.T., 09-12-12, P. 50:

THE COURT: What do you take?

THE DEFENDANT: Glucotrol and Biguanides and Metformin, something like that.

THE COURT: And what's the reason you didn't take your insulin that day?

THE WITNESS: My brother called me and said --

THE COURT: I know about mother, later in the day, why didn't you take it?

THE DEFENDANT: After we left my mother's house, we went to my doctor to get my medication filled, and we went to the pharmacy, and we were waiting and waiting. They said they were backed up, and we had to go pick up our daughter like 6:00 o'clock, 6:30, so we had to leave and come back to get the medication from the pharmacy, so that's why I was not able to take it, because the pharmacy was backed up, and we had to go pick up our daughter.

10

THE COURT: You have no insulin at home on hand?

THE DEFENDANT: No, I didn't, Your Honor.

This Court did not believe the defendant's testimony, as it lacked a scintilla of credibility. The defendant had specific recall of the numerous events leading up to the time the police attempted to stop his vehicle, and then conveniently has absolutely zero recollection of the police chase, despite the fact that the testimony indicates that he was in full control of the vehicle and took drastic, dangerous actions in an attempt to flee the police. He remembers ordering food from Little Caesar's and next waking up in the hospital, but nothing at all in between. A person who has "passed out" would not be able to lead police on a chase of this magnitude. This Court finds this testimony lacking honesty and truthfulness.

To further support this Court's finding of lack of credibility, it is noted that the defendant has a *crimen falsi* conviction for theft - receiving stolen property. [2] "[T]he credibility of a witness may be impeached by evidence that he has prior *crimen falsi* convictions, meaning those that bear on a witness's honesty and truthfulness." *Commonwealth v. Causey*, 833 A.2d 165, 169 (Pa. Super. 2003), appeal denied, 848 A.2d 927 (Pa. 2004) (citing Pa.R.E. 609).

The defendant now raises the issue that the police did not have probable cause to stop him for talking on a cellphone while driving and for the failure to have insurance. This issue was not raised at trial, however, this Court will address this argument, as this issue fails on two (2) levels.

First, Officer Momme testified that the defendant had been observed using a cellphone while driving, which he had termed as a "code violation." This testimony was uncontroverted. It is believed that the defendant will raise the issue of lack of probable cause on this issue due to

---

[2] The Quarter Sessions file was marked as Exhibit C-5, relating to *Commonwealth v. Parker*, CP-51-CR-0608411-1996, which does indicate a conviction for Theft RSP. Exhibit C-5 was admitted without objection.

11

the enactment of changes to the Vehicle Code at 75 Pa. C.S. § 3316(e), which expressly preempted Philadelphia Code §12-1132 (Prohibiting Use of Mobile Telephones by Persons Operating Vehicles), which would negate a reason, i.e., probable cause, to have stopped the defendant. Defendant's anticipated reliance upon this change in the law is misplaced. Although this change was signed into law on November 9, 2011, approximately one month before the defendant's arrest, its effective date was March 8, 2012, nearly 60 days after. Until the law took effect, the Philadelphia Code section cited above was still in effect. Therefore, Officer Momme had probable cause to pull the defendant over for this observed code violation.

Further, a NCIC/PCIC check performed by Officer Momme revealed insurance cancellation on the vehicle. This information also provided a good faith, sufficient basis for Officer Momme to pull the defendant's vehicle over for further investigation. Although it appears that the NCIC information may have been inaccurate, the defendant still had the obligation to pull over. The charges in this case stemmed from the actions taken by the defendant *after* the police attempted to initiate a vehicle stop after activation of the lights and sirens on the police vehicle. The defendant cannot be excused for such actions.

Further, it is well established that NCIC checks can form the basis for probable cause. When the police possess articulable, reasonable grounds to suspect a violation of the Motor Vehicle Code, probable cause exists. *Commonwealth v. Gleason*, 567 Pa. 111, 785 A.2d 983, 985 (2001). Since NCIC reports can form the basis of probable cause, Officer Momme had sufficient probable cause to stop Defendant when he learned through the NCIC report that the vehicle being driven by defendant lacked proper financial responsibility. *Commonwealth v. Riley*, 284 Pa.Super. 280, 425 A.2d 813, 816 (1981).

12

Thus, this officer had specific articulable facts that led him to believe that violations of both the Philadelphia Code and the Motor Vehicle Code were occurring. Given that defendant was being stopped with sufficient probable cause supported by reasonable and articulable grounds, the attempt to stop him was legal. *Commonwealth v. Bolton*, 2003 PA Super 314, 831 A.2d 734, 736-37 (Pa. Super. Ct. 2003).

Had the NCIC/PCIC information been inaccurate, the resulting citations could have been disputed in the appropriate court with jurisdiction over such matters and Mr. Torpey could have appeared to testify as he did before this Court regarding the insurance issue. For the defendant not to comply by pulling over and instead choosing to flee, he set into motion the criminal acts which resulted in the charges which the defendant now claims the Commonwealth failed to prove beyond a reasonable doubt.

In regard to the sufficiency of the evidence presented at trial, the defendant claims that the Commonwealth failed to prove the element of criminal intent as required by each of the statutes upon which he was found guilty. This claim is without merit. With this Court finding the defendant's testimony not credible as it relates to him "passing out behind the wheel" (See Defendant's 1925(b), Paragraph (1)), it was required to look to the direct and circumstantial evidence in order to determine the defendant's intent. *Commonwealth v. Alexander*, 477 Pa. 190, 383 A.2d 887, 889 (1978) ("Criminal intent may be proven by direct or circumstantial evidence.").

This Court looked to the acts of the defendant as stated by the two (2) eyewitnesses in order to glean his intention. "Where the intention of the actor is obvious from the act itself, the finder of fact is justified in assigning the intention that is suggested by the conduct." *Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481, 485 (1980).

13

The testimony of the witnesses clearly shows the defendant did not pass out, but instead took affirmative and direct actions behind the wheel once the police initiated the attempt to pull him over for traffic violations. The defendant drove for numerous city blocks over a period of several minutes, striking cars, going from forward to reverse and back to forward, maintaining control over the vehicle, accelerating, making numerous turns, then bringing his vehicle to a stop, exiting it and then attempting to flee on foot. A person who has "passed out behind the wheel" would not be able to perform any of those acts. The witnessed acts of the defendant belie his claims and, therefore, this Court did not find his testimony credible in the least that he remembers nothing about the incident. His claim of passing out is nothing more than an unaccepted excuse without legal or logical basis. The facts here justify the conclusion that the defendant's intent was supported by his witnessed and reckless conduct.

In regard to the findings of guilt on the following specific charges, under a totality of the testimony standard, the Commonwealth met its burdens in regard to the following:

A person is guilty of 75 Pa.C.S.A. § 3733 - Fleeing or attempting to elude police officer when a driver of a motor vehicle willfully fails or refuses to bring his vehicle to a stop, or who otherwise flees or attempts to elude a pursuing police officer, when given a visual and audible signal to bring the vehicle to a stop.

Defenses to this charge are statutorily set forth as (1) the pursuing police officer's vehicle was not clearly identifiable by its markings or (2) the defendant can show by a preponderance of the evidence that the failure to stop immediately for a police officer's vehicle was based upon a good faith concern for personal safety.

Officer Momme testified that he was in a marked patrol car (N.T., 09-12-2012, P. 23, L. 20-23) when he activated his lights and sirens. It was at that point, that the defendant sped off

14

(N.T., 09-12-2012, P. 22, L. 20-23) and set his criminal acts into motion. This shows the defendant's mental wherewithal as to his surroundings, as he knowingly tried to escape. Further, the defendant failed to provide any testimony as to the applicability of the second statutory defense, therefore, the evidence was sufficient to support the finding of guilt on this charge.

In regard to the determination of guilt on the criminal mischief charges, the defendant claims that since he did not utilize any hazardous materials or tamper with any tangible object, he could not have been guilty of this charge. The evidence presented at trial was sufficient to prove that the defendant intentionally damaged the personal property of another, where the credible trial testimony of Ms. Muwwakkil and Officer Momme established that defendant hit the vehicle occupied by Ms. Muwwakkil, backed up and sped forward, again striking it and causing damage to a vehicle that he did not own. This testimony was sufficient to support a finding of guilt on the criminal mischief charge, as his actions clearly fell within the scope and intent of the statute.

The testimony was also sufficient to support the finding of guilt on the simple assault charge, 18 Pa.C.S.A. § 2701, which is defined as - A person is guilty of assault if he attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another. This Court has already determined that the defendant knowingly and intentionally attempted to elude the police. The resulting charges all stemmed from that initial action. Unfortunately an innocent person, Ms. Muwwakkil, was injured as she testified to on direct examination. Since Ms. Muwwakkil sustained bodily injured as a result of the defendant's criminal actions, the evidence was sufficient to support a finding of guilt on this charge.

The evidence was also sufficient to support a finding of guilt for reckless endangerment. This crime is defined as when a person recklessly engages in conduct which places or **may place** another person in danger of death or serious bodily injury. *See* 18 P.S. §2705.

To sustain a conviction under Section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The *mens rea* for recklessly endangering another person is "a conscious disregard of a known risk of death or great bodily harm to another person." *Commonwealth v. Klein*, 795 A.2d 424, 427–428 (Pa. Super. 2002), (quoting *Commonwealth v. Hopkins*, 747 A.2d 910, 915–916 (Pa. Super.2000) (citations and quotation omitted)).

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. *Commonwealth v. Cordoba*, 902 A.2d 1280, 1289–1290 (Pa. Super.2006) (citing 18 Pa.C.S.A. § 302(b)(3)).

As stated above, the Commonwealth presented sufficient evidence to establish a prima facie case against the defendant on all charges for which he was found guilty, as the offered evidence showed that the defendant fled from police at a high rate of speed (at least double the speed limit) on numerous city streets for several minutes, drove down streets in the wrong direction, disregarded stop signs, and struck an occupied vehicle twice, causing the occupant injury. These reckless acts were not due to complications from a medical condition, but were

16

due to the defendant knowingly driving on a suspended license and aware his scofflaw status with over 50 outstanding tickets, which would result in his arrest. This Court concluded that the circumstances surrounding defendant's actions presented an actual, foreseeable risk of danger. See *Commonwealth v. Reynolds*, 835 A.2d 720, 729 (Pa. Super. 2003).

As to defendant's claim that this Court erred in denying his motion requesting funds to "hire a diabetic doctor," it should be noted that the defendant filed numerous motions *pro se*, but under the guise of his appointed counsel. This claim, like the others raised, is without merit.

On May 29, 2012, defendant filed a motion claiming that the incident leading to his arrest was "medically induced" and had been "viewed by two witnesses, defendant's wife and his brother, and his primary care physician..." As previously indicated, defendant's wife was not an eyewitness to this incident and this Court is unaware of defendant's brother's knowledge as he did not appear at trial to testify on defendant's behalf.

The defendant also claimed that his "primary care physician had seen [him] on the date of his arrest and had ordered him medications" and to prove the defense that he was "sick that day," the "defendant needs the testimony of his or another diabetic expert doctor."

The defendant contends that without an expert diabetic physician, he was prevented from presenting evidence concerning his inability to form a specific intent to commit the above crimes due to complications of his medical condition. This appellate issue is without merit.

The decision to appoint an expert witness is within the sound discretion of the trial court and will not be disturbed except for a clear abuse of that discretion. *Commonwealth v. Gelormo*, 327 Pa.Super. 219, 475 A.2d 765 (1984). There is no obligation on the part of the Commonwealth to pay for the services of an expert, except in capital cases. *Commonwealth v. Williams*, 522 Pa. 287, 294, 561 A.2d 714, 718 (1989) (citing *Commonwealth v. Box*, 481 Pa.

17

62, 391 A.2d 1316 (1978)); *Commonwealth v. Rochester*, 305 Pa.Super 364, 451 A.2d 690 (1982). Furthermore, an indigent defendant does not have the right to choose his own expert or receive funds to hire his own expert. *Commonwealth v. Wholaver*, 605 Pa. 325, 346, 989 A.2d 883, 895 (2010) (relying upon *Ake v. Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985)).

The denial of the defendant's motion did not violate his due process or equal protection rights as alleged. There is no constitutional mandate that an expert is to be appointed to assist the defendant in the preparation of a defense at the public expense. *Gelormo*, 327 Pa. Super. at 229, 475 A.2d at 770 (citations omitted). Therefore, this issue is without merit.

Lastly, the defendant raises an ineffective assistance claim. The first two (2) issues raised[3] are without legal basis. To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (Pa. 1999). A defendant's counsel is presumed to be effective, and a defendant must overcome that presumption and prove all three of the factors referenced above. *Commonwealth v. Singley*, 582 Pa. 5, 19, 868 A.2d 403, 411 (2005).

The first allegation of ineffective assistance of counsel related to the failure of trial counsel to retain an expert witness fails for the reasons stated above. The defendant was indigent and represented by the public defender. The defendant did not have a right to have a court

---

[3] 5. Trial counsel was ineffective for:

    a. failing to present a medical expert who could have testified to the effects of diabetes,
    b. failing to present the Defendant's wife who was an eyewitness

18

appointed expert. A motion to that effect was made and denied. Although the defendant filed the motion under his signature, but allegedly through Defender's Association counsel, Steven Fleury, the attempt to have the Commonwealth pay for an expert was made. Defendant cannot claim his appointed counsel was ineffective for not presenting testimony of an expert witness, when said request for funds to retain this expert was not required nor permitted by this Court. Counsel is not required to pursue motions which have no arguable merit. *Commonwealth v. Goosby*, 461 Pa. 229, 336 A.2d 260 (1975). Defendant's logic in raising this issue fails, as this position lacks arguable merit, thereby failing to fulfill the first prong of an ineffectiveness of counsel argument.

As for the ineffectiveness of trial counsel in not presenting the defendant's wife as witness, this argument also fails. Mrs. Parker was present in the courtroom at the trial of this matter, but was not an eyewitness to these events for the reasons stated above. Her testimony would have been limited to the insurance issue only. Based upon the foregoing reasoning and determination by this Court, this claimed issue fails to satisfy any of the three (3) prongs of an ineffectiveness of counsel argument.

In regard to the defendant's third claim that trial counsel was ineffective for misrepresentation related to waiver of his right to a jury trial, this Court, as stated above, performed an on the record colloquy of the defendant. The defendant also signed a written jury waiver form and his ability to understand the contents thereof was placed on the record, as follows:

N.T., 09-12-2012, P. 8:

THE COURT: Mr. Parker, I'm holding
up a waiver of jury trial form, do you see
this form I'm holding up here?
THE DEFENDANT: Yes, Your Honor.

19

THE COURT: Now, did you go over this entire form with your attorney?

THE DEFENDANT: Yes, very thoroughly, Your Honor.

THE COURT: And you do understand

N.T., 09-12-2012, P. 9:

what this form says?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Now, at the bottom of this page that I'm pointing to, right here, there's a signature, do you see that? I'm going to have it handed back to you?

THE DEFENDANT: I can see it. I seen it, yes.

THE COURT: Now, is that your signature at the bottom of the page there on this form?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And did you sign this form of your own free will?

THE DEFENDANT: Yes, Your Honor.

...

N.T., 09-12-2012, P. 10:

THE COURT: Now, according to the form that you signed, that you said you discussed thoroughly with your attorney and that you've indicated that you understood, you have agreed to give up your right to a jury trial and allow me to listen to all the evidence and decide whether you are guilty or not guilty of the charges against you; do you understand that this is what have you signed?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Now, do you agree to have this case heard by me today sitting without a jury?

N.T., 09-12-2012, P. 11:

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have any promises been

20

made to you to give up your right to a jury
trial?
THE DEFENDANT: No, Your Honor.
THE COURT: Have any threats been
made to you to give up your rights to a jury
trial?
THE DEFENDANT: No, Your Honor.

The defendant did not raise any issue at the time, despite having been given the opportunity to do so. Further his 1925(b) is silent as the nature of this alleged misrepresentation.

The right to trial by jury is recognized by Rule 620 of this Court's Rules of Criminal Procedure, which provides:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness. Pa.R.Crim.P. 620.

When a presumptively valid jury waiver is collaterally attacked under the guise of ineffectiveness of counsel, it must be analyzed like any other ineffectiveness claim. *Commonwealth. v. Mallory*, 941 A.2d 686, 596 Pa. 172, Sup.2008, *cert. denied* 129 S.Ct. 257, 555 U.S. 884, 172 L.Ed.2d 146, *on remand* 2009 WL 6978587.

Since this Court was made aware of this issue for the first time on appeal, there is no record for the basis of this claim for which this Court can reference. Due to the defendant's failure to file a PCRA petition with this Court, there has been no ability for collateral review. This Court relies on *Commonwealth v. Barnett*, 25 A.3d 371, 377 (Pa. Super. 2011), where an en banc panel held:

> This Court [the Superior Court] cannot engage in review of ineffective assistance of counsel claims on direct appeal absent an "express, knowing and voluntary waiver of PCRA review." With the proviso that a defendant may

21

waive further PCRA review in the trial court, absent further instruction from our Supreme Court, this Court...will no longer consider ineffective assistance of counsel claims on direct appeal. (citing *Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119 (2008) and *Commonwealth v. Liston*, 602 Pa. 10, 28, 977 A.2d 1089, 1100 (2009).

See also *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002) (establishing a general rule that claims of ineffective assistance of counsel should ordinarily be reserved for collateral review).

The defendant never raised his ineffective assistance of counsel claims at the trial court level and no record has been developed on this issue due to this failure. Consequently, according to *Barnett, supra*, and *Grant, supra*, defendant is presently foreclosed from raising his ineffectiveness of counsel issues on direct appeal because these issues were ripe for a PCRA petition to this Court. Therefore, this issue should be dismissed in accordance with the holding in *Barnett* (dismissing Barnett's claims of ineffective assistance of counsel without prejudice to raise them in a subsequent PCRA petition) limiting the PCRA issue solely to the waiver of his right to a jury trial based upon the alleged misrepresentations by his court appointed counsel.

As to the challenges made by the defendant on his convictions, it is requested that the verdict of this Court be affirmed on appeal or in the alternative, remanded for the limited issue of determination of the issue raised in regard to defendant's waiver of his right to a jury trial through a proper PCRA petition.

BY THE COURT:

_____ J.
ANGELO J. FOGLIETTA

22

COMMONWEALTH V. JASON PARKER

CP-51-CR-0014583 -2011

286 EDA 2013

## PROOF OF SERVICE

I hereby certify that I am this day serving the forgoing Opinion upon the person(s),

And in the manner indicated below, which satisfies the requirements of Pa. R. Crim. P. 114:

COUNSEL:

> Emily B. Cherniack, Esquire
> Attorney for Jason Parker
> 1500 Walnut Street, Suite 1100
> Philadelphia, PA 19102

> Hugh J. Burns, Esq.
> Chief, Appeals Unit
> Philadelphia District Attorney's Office
> Three South Penn Square
> Philadelphia, PA 19107

> Superior Court Prothonotary
> 530 Walnut Street, Suite 315
> Philadelphia, PA 19106

TYPE OF SERVICE:   FIRST CLASS MAIL

Dated: October 28th, 2013

Foglietta, J